550 So.2d 568 (1989)
STATE of Louisiana
v.
Darryl MARTIN.
No. 87-KA-1438.
Supreme Court of Louisiana.
September 12, 1989.
*569 William J. Guste, Jr., Atty. Gen., Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., for plaintiff-appellee.
Dwight Doskey, Orleans Indigent Defender Program, for defendant-appellant.
WATSON, Justice.
Darryl Martin was convicted of first-degree murder for the rape and killing of Donna Ann Scioneaux.[1] On the basis of aggravating circumstances, the jury unanimously imposed a death sentence. This is the direct appeal of Martin's conviction and sentence.[2]

FACTS
After meeting at Danny & Clyde's, a neighborhood convenience store in Jefferson Parish, Darryl Martin and Harry Scioneaux had become friends. Darryl Martin lived in a small trailer next door to Danny & Clyde's. Martin and Scioneaux saw each other frequently. Scioneaux often allowed Martin to use his shower because there were no shower facilities in Martin's trailer. Residing with Scioneaux were his thirteen-year old daughter, Donna Ann, and his six-year old son, Harry, Jr.
On the evening of May 12, 1982, 26-year old Martin went to the Gretna apartment of Scioneaux. The two men left the Scioneaux residence at approximately 11:30 P.M. to go to Danny & Clyde's. Before leaving, Scioneaux checked all the doors and made sure they were locked. The outside light was turned on over the front door and Scioneaux told Donna Ann to lock the dead bolt. Donna Ann had been instructed on what to do if anyone came to the house when her father was gone. After looking out her bedroom window to ascertain who was there, she was to tell friends that her father was at the convenience store. She was not to admit any strangers.
While at Danny & Clyde's, the two men drank beer and spoke to various people. Harry Scioneaux met a woman. After telling *570 Martin he was leaving, Scioneaux departed with the woman.
Scioneaux returned home between 5:30 and 6:00 A.M. the following morning. The front door was unlocked and he heard Donna Ann's alarm clock ringing. When he shut off the alarm, he discovered that she was missing. After he and various neighbors searched in vain for the missing girl, a report was filed with the Jefferson Parish authorities.
On May 16, 1982, Donna Ann Scioneaux's body was found in the Donner Canal, clad only in her nightgown. Donna Ann was 4 feet 8 inches tall and weighed 81 pounds. An autopsy disclosed that she had been brutally raped before her death, both vaginally and anally. There was severe bruising on her inner thighs. The vaginal opening, which should have been one-half inch in diameter, was stretched to a one-inch diameter and torn in three places with lacerations of up to one and one-half inches. The membrane of the vaginal canal was abraded, indicating repeated penetration. Her rectum was stretched to three or four times its normal size and the lining of the rectum was rubbed away by repeated penetration.
Donna Ann sustained forceful injuries to her head and back; her chest and hips were extensively bruised. The cause of death was asphyxiation by drowning between 1:00 and 2:30 A.M. on May 13, 1982.
Because Donna Ann drowned in the Donner Canal, which is entirely in Orleans Parish, the investigation of her murder was undertaken by the New Orleans Police Department. On June 2, Detective Ronald Brink, who had no suspects, drove Darryl Martin around the French Quarter in a police vehicle to retrace Martin's reported activities. Detective Brink thought Martin might have mentioned to someone that Harry Scioneaux was not at home. Brink's theory was that the person could have gone to burglarize the Scioneaux apartment and found Donna Ann. Before returning Martin to his place of employment, Brink had to complete a report. As Brink wrote his notes, his police car began to overheat, and Brink suggested that they move to the air conditioned detective bureau. Martin agreed.
While Brink questioned Martin about his movements that night, Martin began to cry and murmured, "You know, don't you?" At that point, Brink stopped the conversation, advised Martin of his Miranda[3] rights, and informed him that he was a suspect in the murder of Donna Ann Scioneaux. Detective Brink then asked Detective Bernadine Kelly of the rape division for assistance in questioning Martin. Brink again advised Martin of his Miranda rights. Detective Kelly also read Martin his Miranda rights and explained them. Martin signed a waiver of rights form, which was witnessed by Detectives Kelly and Brink.
Detective Thomas Woodall of the homicide division was summoned, Detective Brink again read Martin his Miranda rights, and Martin signed another waiver of rights form witnessed by Detectives Woodall and Brink. The police officers then took a recorded statement from Martin.
In his statement, Martin admitted that he went back to the Scioneaux apartment after Harry Scioneaux left Danny & Clyde's. When Donna Ann looked out the window, Martin told her that her father needed her at Martin's trailer, which did not have a phone. Donna Ann, in a nightgown and slippers, walked with Martin to his trailer. When Martin opened the trailer door, he pushed Donna Ann inside and covered her mouth as she started screaming. Although she begged for her release, Martin said he couldn't let her go home because she would tell her father. Martin admitted slapping her and hitting her head. Although he admitted raping Donna Ann, Martin also made contradictory statements, denying that he ever penetrated her, and maintaining that he only ejaculated over her unconscious body. Believing Donna Ann to be dead, and fearing discovery, Martin dressed her in her nightgown and carried her a few hundred feet through some *571 woods to the Donner Canal. On the way he crouched down on the levee to avoid the headlights of passing cars. At the canal, Martin slid Donna Ann's body into the water so that it wouldn't make noise. He threw her underwear and slippers into a dumpster near his trailer, returned to Danny & Clyde's and then visited some French Quarter bars.
After Martin was indicted for the first degree murder of Donna Ann Scioneaux, a sanity commission decided that Martin might be mentally retarded. Martin told the psychiatrists that he had ingested beer, whiskey, marijuana and pills on the night of the murder. Since its initial tests were limited, the commission recommended further testing at the Feliciana Forensic Facility in Jackson, Louisiana, and declared Martin incompetent to stand trial. At Jackson, Martin was diagnosed as an alcoholic, anti-social personality. Some of the people treating him described him as a malingerer. Extensive testing ruled out mental retardation. In May of 1983, Martin was found competent to stand trial by a second sanity commission. Martin entered a plea of not guilty and not guilty by reason of insanity.
At trial, the defense presented the testimony of Dr. Kenneth Ritter, a psychiatrist who had served on both sanity commissions. Dr. Ritter testified that excessive alcohol could have made Martin unable to discern right from wrong or merely irresponsible.
In rebuttal, the state called Dr. Ignacio Medina, Jr., another psychiatrist who had served on both sanity commissions. Dr. Medina believed that Martin's detailed confession showed he knew the difference between right and wrong. One example of guilty knowledge was Martin's crouching down on the levee while a car passed.
The jury found Darryl Martin guilty of first degree murder, rejecting his claim of insanity at the time of the offense. After finding statutory aggravating circumstances, the jury unanimously recommended the death penalty.
In this direct appeal of his conviction and sentence, Martin assigns three errors. Defense counsel did not contemporaneously object to these alleged errors at trial[4] and did not brief two of the assignments. However, this is a capital case in which all assignments of error are reviewed. Compare State v. Bay, 529 So.2d 845 (La.1988). This court has an independent obligation to examine the record for passion, prejudice or arbitrary factors which may have contributed to the death penalty recommendation, despite the lack of contemporaneous objection,[5] or failure to brief an argument.[6]

ASSIGNMENT OF ERROR NUMBER ONE
Martin argues that the prosecutor deliberately inflamed the jurors by telling them in closing argument that no worse crime *572 had been committed in Nazi Germany, and only a verdict of guilty as charged would satisfy the father of the victim.
Arguments by counsel may not appeal to prejudice, but must be limited to the evidence admitted, the lack of evidence, conclusions of fact drawn from the evidence by the state or defense, and the applicable law.[7] A conviction will not be reversed because of an improper closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Byrne, 483 So.2d 564 (La.), cert. den., 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986); State v. Knighton, 436 So.2d 1141 (La.1983), cert. den., 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984).
This prosecutor's comments were excessive, improper and a possible appeal to the jurors' prejudice. However, the jury's verdict was supported by Martin's confession and the medical evidence. There is little likelihood that the prosecutor's remarks contributed to the verdict. A perfect trial on the issue of guilt is not a constitutional mandate. Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). "Credit should be accorded to the good sense and fairmindedness of jurors who have heard the evidence and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence." State v. Kyles, 513 So.2d 265, 276 (La.1987), cert. den., ___ U.S. ___, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988); State v. Dupre, 408 So.2d 1229 (La.1982).
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
Martin argues that the trial judge erred in failing to instruct the jury that it could recommend life imprisonment without finding a mitigating circumstance.
At the sentencing phase of trial, the state introduced all evidence adduced at the guilt phase, certified copies of Martin's prior convictions[8] and a picture of Donna Ann Scioneaux's body as it was pulled from the Donner Canal. The state argued that the jury should find as aggravating circumstances that the murder was committed during the perpetration of an aggravated rape[9] and an aggravated kidnapping,[10] that *573 Martin had a significant history of prior criminal conduct, and that the murder was committed in a heinous, atrocious and cruel manner.
The defense presented Martin's testimony and that of his sister and two nieces. During Martin's cross-examination, he admitted to drinking only a few beers the night of the murder and was unable to articulate why his life should be spared. The defense presented evidence that Martin's mother had died when he was eleven and that he had come from a broken home. Defense counsel's closing argument contained a plea to save Martin's life and informed the jury that any circumstance could be considered to mitigate a death penalty.
The judge charged the jury under LSA-C.Cr.P. art. 905.3, telling them that they could consider recommending the death penalty only after unanimously finding the existence of at least one statutory aggravating circumstance. If no aggravating circumstance was found, life in prison would be the only possible sentence. If the jury found a statutory aggravating circumstance, it was instructed to consider any mitigating circumstances before deciding that a sentence of death should be imposed.
The jury retired to deliberate at 12:17 A.M. At 1:38 A.M. the jury foreman requested clarification of the law regarding mitigating and aggravating circumstances. The entire dialogue between the judge and the jury foreman is attached as Appendix I. The foreman specifically asked the judge three times if the jury could recommend a sentence other than death if it had unanimously agreed on at least one aggravating circumstance, but had found no mitigating circumstances. The judge did not answer the question. The judge merely repeated his prior instructions and told the jury that, absent an unanimous decision, a life sentence would be imposed.[11] At 1:55 A.M. the jury returned and unanimously recommended that Darryl Martin be sentenced to death. The aggravating circumstances listed on the verdict form were: (1) that the offender was engaged in the perpetration or attempted perpetration of aggravated rape, aggravated kidnapping, aggravated burglary, aggravated arson, aggravated escape, armed robbery or simple robbery;[12] and (2) that the offense was committed in an especially heinous, atrocious or cruel manner.[13]
When a jury is given the responsibility of determining whether a defendant receives a sentence of death or life imprisonment, its "... discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." Gregg v. Georgia, 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859, 883 (1976). The Louisiana rules for sentencing in capital cases are designed to narrow the jury's discretion. At the sentencing hearing, the jury must be informed about the circumstances of the offense and the character and propensities of the offender.[14] The *574 jury must be guided by proper sentencing instructions. "[A]ccurate sentencing information is an indispensable prerequisite to a reasoned determination...."[15]
According to the colloquy between the jury foreman and the judge, at least two of these jurors were confused about whether they could return a sentence of life imprisonment without any mitigating circumstances. A misunderstanding by any one of the jurors which resulted in a death penalty would constitute prejudicial error.[16]
In repeating the instructions pursuant to LSA-C.Cr.P. art. 905.3, the trial judge did not give an incorrect statement of the law, but he did not answer the question. The foreman persistently pressed the judge to tell them whether, if they found an aggravating circumstance but no mitigating circumstance, they were required to return the death penalty. The judge persistently avoided answering the inquiry. A reasonable juror could have understood the instruction to mean that once an aggravating circumstance was found, it would require a mitigating circumstance for the jury to recommend life imprisonment. It should have been made clear that a jury is not required to find a mitigating circumstance in order to recommend a life sentence. Compare Penry v. Lynaugh, ___ U.S. ___, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).
This assignment of error has merit. A new sentencing hearing must be held with a jury that fully understands its sentencing options.

ASSIGNMENT OF ERROR NUMBER THREE
Martin argues that the death penalty cannot be constitutionally imposed on a defendant who has the mental abilities of a minor.
Although he entered a plea of not guilty and not guilty by reason of insanity, Martin introduced no evidence of a mental disease or defective intelligence.
A defendant claiming the defense of insanity must show he suffered from a mental disease or defect which rendered him incapable of distinguishing right from wrong.[17] The defendant bears the burden of proving by a preponderance of the evidence that he was insane at the time of the offense. LSA-C.Cr.P. art. 652; State v. Nealy, 450 So.2d 634 (La.1984); State v. Brogdon, 426 So.2d 158 (La.1983), appeal after remand, 457 So.2d 616 (La.1984), cert. den., 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985).[18]
Defense counsel had the discharge summary from Feliciana Forensic Facility, detailing Martin's psychological history, and Dr. Ritter's entire medical file, but did not introduce them into evidence. Although the initial testing by the sanity commission indicated Martin was illiterate and had the mental ability of a child, more extensive testing showed no mental retardation.[19]
Dr. Ritter testified that Martin's ability to distinguish right from wrong might have been impaired by a combination of low intelligence with drug and alcohol use. However, at the sentencing phase of trial, Martin admitted that he had not ingested anything but a few beers. Additionally, Dr. Medina believed that Martin's actions showed he was not insane at the time of the offense.
*575 Mental retardation was ruled out after testing, and Martin admitted that his reported intoxication was exaggerated. Nothing substantiated Martin's claim of mental incapacity. Due to the paucity of evidence of a mental disease or defect at the time of the offense, a rational trier of fact could have concluded that Martin was not insane when he raped and murdered Donna Ann Scioneaux.
This assignment is without merit.

DECREE
For the foregoing reasons the defendant's conviction of first degree murder is affirmed. The sentence of death is reversed and vacated and the case is remanded to the district court for a new sentencing trial.
CONVICTION AFFIRMED; SENTENCE OF DEATH REVERSED AND VACATED; CASE REMANDED TO THE DISTRICT COURT.

APPENDIX I
At this time the jury returns to open court, and the following:
THE COURT:
Yes, sir?
FOREMAN:
Your Honor, I'm sorry to cause any confusion or inconvenience to anyone, but we have a problem and we need advice. And the advice is, there are two members of our jury
THE COURT:
Don't tell me how you voted.
FOREMAN:
It's nothing concerning the vote, sir. It's a matter of understanding. And please bear with us. And the understanding is, on the two jurors, that they would wish a clarification concerning mitigating circumstances and aggravating circumstances. And by that, I mean, does the agreement by this jury whereby theyif it has been found by agreement of all members that at least one aggravating circumstance has been found, has been proven by the State, if we agree to that, does this agreement, and in light of any mitigating circumstances that we have considered, does this agreement that one does in fact exist, does this agreement carry with it the stipulation that the death penalty is the mandatory sentence for the defendant?
THE COURT:
Before you decide that a sentence of death should be imposed you must unanimously find beyond a reasonable doubt that at least one alleged aggravating circumstance existed. If you find beyond a reasonable doubt that any of the statutory aggravating circumstances or alleged aggravating circumstances existed you may consider imposing a sentence of death. If however, you do not unanimously find beyond a reasonable doubt that any of the alleged statutory aggravating circumstances existed, then life imprisonment without probation, parole or suspension of sentence is the only sentence that may be imposed. Even if you find the existence of the alleged aggravating circumstances, you must also consider any mitigating circumstances before you decide a sentence of death should be imposed. And you have a list of those mitigating circumstances.
Now, if you cannot reach a verdict, if you cannot get twelve of you to agree that the State has proven to your satisfaction and beyond a reasonable doubt that an aggravating circumstance exists, and you can't find that there has been a mitigating circumstance, and you get helplessly deadlocked, of course the court will sentence the defendant to life in prison without probation, parole, or suspension of sentence.
If you find both aggravating and mitigating circumstance then you weigh those and come up with your recommendation.
Does that answer your question? In other words, in order to bring back the death penalty you have to have at least one aggravating circumstance.
FOREMAN:
We understand that, Your Honor.
THE COURT:
And then you consider any mitigating circumstances.
*576 FOREMAN:
We understand that.
THE COURT:
And then you decide life or death. If you didn't find an aggravating circumstance you could not bring in the death penalty.
If you find both, then you can recommend death or life. If you can't agree, unanimously agree, then the court will automatically sentence the defendant to life without probation, parole or suspension of sentence.
FOREMAN:
One more question, Your Honor. If in fact an aggravating circumstance, in our opinion by unanimous vote, if it is proven by the State, is it possible for this panel to consider an alternate punishment other than death?
THE COURT:
You can find an aggravating circumstance and can also possibly find a mitigating circumstance and then you just bring in any verdict you want, of the two.
FOREMAN:
But a mitigating circumstance must be found.
THE COURT:
If you find beyond a reasonable doubt... any of the statutory aggravating circumstances or alleged aggravating circumstances you "May" consider imposing a sentence of death. If, however, you do not unanimously find beyond a reasonable doubt that any of the alleged aggravating circumstances existed then life imprisonment will be the only sentence that you can impose. Even if you find the existence of an alleged aggravating circumstance, you must also consider any mitigating circumstance before you decide a sentence of death should be imposed. And you have a list of those to be considered as mitigating circumstances.
FOREMAN:
I guess the word that we're having problems with, Your Honor, is the word "May." If we do find that an aggravating circumstance exists, we may consider the death penalty.
Your Honor, the question has come up, does that indicate that another sentence may also be imposed?
THE COURT:
If you find that there are mitigating circumstances you do not have to state what those circumstances are. If you find an aggravating circumstance, or more than one aggravating circumstance, you must list those in order to bring in the death penalty. If you find both, you still can weigh them and bring in a death penalty. But if you find no aggravating circumstances then of course you have to bring in a life sentence. If you can't all agree unanimously then the court will sentence the defendant to life imprisonment.
FOREMAN:
Thank you, Your Honor, we'd like to retire to the juryroom.
Tr. 478-81.
NOTES
[1] LSA-R.S. 14:30 provides:

(A). First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, forcible rape, aggravated burglary, armed robbery, first degree robbery, or simple robbery;
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties;
(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person; or
(4) When the offender has specific intent to kill or inflict great bodily harm and has offered, has been offered, has given, or has received anything of value for the killing.
(5) When the offender has the specific intent to kill or to inflict great bodily harm upon a victim under the age of twelve years.
(B). For the purposes of Paragraph (A)(2) herein, the term "peace officer" is defined to include any constable, marshal, deputy marshal, sheriff, deputy sheriff, local or state policeman, commissioned wildlife enforcement agent, federal law enforcement officer, jail or prison guard, parole officer, probation officer, judge, attorney general, assistant attorney general, attorney general's investigator, district attorney, assistant district attorney, or district attorney's investigator.
(C). Whoever commits the crime of first degree murder shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence in accordance with the determination of the jury.
[2] LSA-Const.1974, Art. 5, § 5(D) provides:

(D) In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional or (2) the defendant has been convicted of a capital offense and a penalty of death actually has been imposed.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] LSA-C.Cr.P. art. 841 provides:

A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
B. The requirement of an objection shall not apply to the court's ruling on any written motion.
C. The necessity for and specificity of evidentiary objections are governed by the Louisiana Code of Evidence.
[5] State v. Sonnier, 379 So.2d 1336 (La.1979), appeal after remand, 402 So.2d 650 (La.1981), cert. den., 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983); LSA-C.Cr.P. art. 905.9.1 (Louisiana Supreme Court Rule 28 § 1) provides:

Every sentence of death shall be reviewed by this court to determine if it is excessive. In determining whether the sentence is excessive the court shall determine:
(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
[6] State v. Kirkpatrick, 443 So.2d 546 (La.1983), cert. den., 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984).
[7] LSA-C.Cr.P. art. 774.
[8] 1979 conviction for forgery, 1977 conviction for aggravated battery with a dangerous weapon, 1981 conviction for possession of marijuana and 1981 conviction for unauthorized use of an automobile.
[9] LSA-R.S. 14:42 provides:

A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
(5) When two or more offenders participated in the act.
B. For purposes of Paragraph (5), "participate" shall mean:
(1) Commit the act of rape.
(2) Physically assist in the commission of such act.
C. Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
[10] LSA-R.S. 14:44 provides:

Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
Whoever commits the crime of aggravated kidnapping shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
[11] LSA-C.Cr.P. art. 905.8 provides:

The court shall sentence the defendant in accordance with the determination of the jury. If the jury is unable to unanimously agree on a determination, the court shall impose a sentence of life imprisonment without benefit of probation, parole or suspension of sentence.
[12] The jury foreman obviously wrote out the entire statutory aggravating circumstance of LSA-C.Cr.P. art. 905.4(A)(1) without indicating which specific offense(s) the jury found Martin to have committed.
[13] Even though the Louisiana jurisprudence holds that the "heinous" aggravating circumstance only applies where there was torture or the pitiless infliction of unnecessary pain on the victim, this jury was not given a limiting instruction to narrow its discretion as required by Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).
[14] LSA-C.Cr.P. art. 905.2 provides:

The sentencing hearing shall focus on the circumstances of the offense and the character and propensities of the offender. The hearing shall be conducted according to the rules of evidence. Evidence relative to aggravating or mitigating circumstances shall be relevant irrespective of whether the defendant places his character at issue. Insofar as applicable, the procedure shall be the same as that provided for trial in the Code of Criminal Procedure. The jury may consider any evidence offered at the trial on the issue of guilt. The defendant may testify in his own behalf. In the event of retrial the defendant's testimony shall not be admissible except for purposes of impeachment.
[15] Gregg, supra, 428 U.S. at 190, 96 S.Ct. at 2933.
[16] See State v. Williams, 392 So.2d 619 (La. 1980); State v. Loyd, 459 So.2d 498 (La.1984), appeal after remand, 489 So.2d 898 (La.1986), cert. den., 481 U.S. 1042, 107 S.Ct. 1984, 95 L.Ed.2d 823 (1987).
[17] LSA-R.S. 14:14 provides:

If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.
[18] "The relevant inquiry on appeal is whether the defendant adduced evidence of his insanity at the time of the offense such that any rational trier of fact could have concluded that he carried the burden of proving his insanity by a preponderance of the evidence. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)." State v. Brogdon, supra, at 168.
[19] Testimony of Dr. Kenneth Ritter, Tr. 338-340.