ISABEL S. DONOVAN *v.* CHARLES SELINAS AND MARY SELINAS.

May Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed October 9, 1911.

*Evidence—Admission—Silence—Self Serving Declarations—Husband and Wife—Wife's Separate Property—Findings by Master—Resulting Trusts—Payment of Consideration for Conveyance to Another.*

Exceptions not briefed by the exceptor are waived.

Where the issue is as to the ownership of property as between husband and wife, evidence as to how the matter was understood and treated between them is admissible.

Testimony of a witness that during the more than nine years she lived with a married couple she never had heard the husband claim to own the property in question, and that once the husband told the wife that a tenant wanted certain repairs made, and the wife answered that she would have it done, was properly received as at least of some probative value on the question of ownership, especially when taken with other testimony of the witness that the wife always spoke of the property as hers, collected the rents, and made repairs.

On an issue between a widow and the heirs of her deceased husband as to the ownership of certain real estate, testimony of a former tenant thereof that he suggested to the decedent that the tenant would give a mortgage on his furniture to secure the rent for the approaching

winter, and decedent's wife came in while they were talking and told the tenant that he need not worry, that they did not want a mortgage, "I own that house, and don't you let your little ones want for anything. I will let the rent set," was not objectionable as self serving, for the wife's statements were made in the husband's presence and in circumstances that would naturally provoke a denial, if untrue, and besides the statements were an exercise of an act of ownership.

On an issue between a widow and the heirs of her deceased husband as to the ownership of certain real estate, the master's finding that the decedent bought the property with money belonging to his wife precludes the idea that the husband had any marital interest in the money, though the master did not find that she received all of it from her father's estate, as she claimed.

Where a husband buys real estate with his wife's money and takes the title to himself, he holds that title for her use and benefit.

APPEAL IN CHANCERY. Heard on the pleadings, and master's report and defendant's exceptions thereto, at the March Term, 1911, Washington County, *Miles*, Chancellor. Decree *pro forma*, overruling the exceptions and decree for the orator in accordance with the prayer of the bill. The defendant appealed. The opinion states the case.

*Senter & Senter* for the orator.

The fact having been found that this real estate was purchased by money belonging to the oratrix then equity will decree it to her. It is well settled in this State that the wife is entitled to all her separate estate and that she can follow the same in equity if it has been invested by her husband in his name unless creditors intervene without notice which is not this case. *Richardson* v. *Est. of Merrill*, 32 Vt. 28; *Porter* v. *Bank*, 19 Vt. 410; *Richardson* v. *Wait*, 39 Vt. 535; *Caldwell* v. *Renfrew*, 33 Vt. 213; *Cardell* v. *Ryder*, 35 Vt. 47; *Allen* v. *Cole*, 39 Vt. 319; *Childs* v. *Pearl*, 43 Vt. 224; *Curtis* v. *Hapgood*, 43 Vt. 228.

*Harry C. Shurtleff* for the defendant.

POWERS, J. The oratrix is the widow of John P. Donovan, who died intestate and without issue. The defendant Mary Selinas is a sister of Donovan, and his only next of kin. The other defendant is her husband.

In 1889, Donovan bought of one Scribner certain premises in Montpelier on which were two rented houses called the Scribner Houses,—paying therefor the sum of three thousand dollars and taking deeds in his own name. Later Donovan conveyed one undivided half of these premises to one Fuller, who, on the same day, conveyed the same to the oratrix. Donovan died in 1904, and the oratrix and Andrew Howe were appointed administrators of his estate. The probate court granted them a license to sell all the real estate belonging to Donovan's estate and on February 10, 1906, they deeded to one Emery one undivided half of the premises in question, and he immediately conveyed the same to the oratrix. In July, 1910, these defendants, claiming that the title to one undivided half of these premises was in Donovan when he died and that a certain part thereof immediately vested in the defendant Mary at his death, brought a petition for partition, which was enjoined when this suit was brought and is now pending. The oratrix asks that these partition proceedings be perpetually enjoined and that the Scribner property be decreed to her.

One witness for the oratrix testified before the master that she lived in the Donovan family about six years, and that on different occasions Donovan told her that the premises in question belonged to Mrs. Donovan; that he bought them with her money, and that it was money which came to her from her father's estate and some she had before; that Mrs. Donovan kept her account at the Savings Bank, and Donovan his in the National Bank, and that there was money kept by itself in Donovan's safe which he said was Mrs. Donovan's rent money, and to other facts tending to show that Donovan treated the property as belonging to his wife. Another witness for the oratrix testified that she lived with the Donovans over nine years, and that Mrs. Donovan always spoke of the houses as hers, and that she always collected the rents and made the repairs.

Another witness, who was employed in Donovan's store for five years, and for nineteen years occupied a part of the same building, and knew about his business affairs, testified that Donovan told her that he bought these houses with his wife's money, and that she received the money from her father's estate.

All the foregoing testimony was either received without objection or if objected to the exception thereto is waived by not being covered by the brief.

One of the witnesses above referred to was also allowed to testify that during the time she lived with the Donovans, she never heard Mr Donovan claim to own this property; and that at one time Donovan told his wife that Rivers, a tenant in one of the houses, wanted certain repairs made, and that she replied, "all right, I will have it done." This was taken subject to objection and exception, and it is now urged that so much thereof as relates to Donovan's failure to claim ownership was erroneously received because no circumstances were shown calling upon him to make such claim, citing *Pierce* v. *Pierce,* 66 Vt. 369, 29 Atl. 364. But when, as here, the question is as to the ownership of property between husband and wife, evidence showing how the matter was understood and treated between them is relevant. *Fletcher* v. *Wakefield,* 75 Vt. 257, 54 Atl. 1012; *Richardson* v. *Merrill's Est.,* 32 Vt. 27; *Cardwell* v. *Renfrew,* 33 Vt. 213. The fact that during the nine and one-half years that the witness was a member of Donovan's household he was never heard to claim this property especially when taken with the other testimony of the witness that Mrs. Donovan always spoke of it as hers, and collected the rents and made the repairs, was of, at least, some probative value on the main question of ownership, and was properly received.

Another witness testified that he was a tenant of one of the houses for sixteen or seventeen years, and that at one time he was out of work and went to Donovan and told him of his situation, and suggested that he would give a mortgage on his furniture to secure the rent for the approaching winter that Donovan replied that it would be a long time before spring and that a mortgage would not keep houses up. That Mrs. Donovan came in while they were talking and when she heard what was said, spoke as follows: "Mr. Willard, don't you worry. We don't want no mortgage. I own that house, and don't you let your little ones want for anything. I will let the rent set." That to this statement, Donovan made no reply.

This testimony was also excepted to, and it is now said to

be self-serving. But it was made in the presence of the husband and in circumstances which would naturally call forth some sort of protest or denial if it was untrue. Besides, the wife was not only asserting ownership of the property, she was exercising an act of ownership by declining security for the rent and agreeing to give credit therefor,—which the husband had manifested a disposition not to do. The evidence tended to show that Donovan allowed his wife to manage the property and treated it as belonging to her, and so was, as we have seen, admissible.

The master finds the fact that Donovan bought the property in question with money belonging to his wife. That he is unable to find that she received all of the three thousand dollars from her father's estate, is unimportant. The money was the money of the wife; and the finding precludes the idea that the husband had any marital interest in it. Having bought the property with her money and having taken the title to himself, he held that title, so far as he had not conveyed it to her, for her use and benefit. *Dewey* v. *Long*, 25 Vt. 564; *Williams* v. *Wager*, 64 Vt. 326, 24 Atl. 765; *Beddow* v. *Sheppard*, 118 Ala. 474, 23 So. 662; *Black* v. *Black*, 64 Kan. 689, 68 Pac. 662.

*Pro forma decree affirmed and cause remanded.*