558 So.2d 546 (1990)
STATE of Louisiana
v.
Roy JONES.
No. 89-K-1195.
Supreme Court of Louisiana.
March 12, 1990.
Risley Triche, Triche & Sternfels, Napoleonville, for applicant.
*547 William J. Guste, Jr., Atty. Gen., Douglas Greenburg, Dist. Atty., for respondent.
CALOGERO, Justice.
Roy Jones was employed as a deputy sheriff by Terrebonne Parish Sheriff Charlton Rozands for thirty-three months before the latter's death while in office in April of 1987. Following his tenure in office, Jones was convicted of two felonies, public payroll fraud, R.S. 14:138(1), and theft of over $500, R.S. 14:67.[1] The former conviction arose out of a charge that Jones knowingly received compensation from the state for services "grossly inadequate" for the payment received. The latter conviction was responsive to a charge that he stole $4,101 by charging personal gasoline and oil purchases to the sheriff's department.
The court of appeal affirmed both convictions, with one of the three judges dissenting regarding the public payroll fraud conviction. State v. Jones, 540 So.2d 1124 (La.App. 1st Cir.1989). We granted writs primarily to consider two questions central to defendant's assignments of error numbers one and two. Should the trial court have permitted testimony about what the now-deceased sheriff told defendant in delineating his duties and about use of the department's credit cards, and should the court have permitted a former Louisiana sheriff, qualified as an expert, to testify as to his opinion of the value of services of a deputy such as Jones? For the following reasons we find both assignments of error meritorious, reverse the convictions, and remand for a new trial.[2]

FACTS
Sixty-seven years old at the time, Jones was placed on the sheriff's payroll when Charlton Rozands assumed the office of sheriff on July 1, 1984.[3] He remained on the payroll until the day after Sheriff Rozands' funeral in April 1987. During his thirty-three months of employment he was paid a total of $18,850, $580 each four week period.[4] He charged $4,101 on sheriff's office credit cards given him by Sheriff Rozands. Defendant was a sworn deputy equipped with the trappings of that office: he was assigned a badge and uniform, was authorized to carry a card with his name and a designation: "Assistant to Charlton P. Rozands, Sheriff of Terrebonne Parish," was assigned sheriff's units 104 and 217 consecutively, and sported sheriff's department decals on his boat. Furthermore, Jones performed deputy sheriff services including patrolling the Gibson area where he lived and was stationed, settling local disputes, investigating local crimes and complaints, driving Sheriff Rozands to official functions, and delivering documents for the sheriff when needed. The state has not contended that Jones performed no services or that those services were only somewhat lacking, but rather that his services were "grossly inadequate" for the pay he received.
Jones indeed had a special position with the sheriff's department. His pay was less than other deputies; he earned only $580 each four week period as opposed to full-time patrolmen who earned $855 base each four week period, plus state supplemental pay. Also his assignments were different; he worked directly under Sheriff Rozands rather than under any other supervisor or shift commander, he did not have regular hours or work in any specific division of *548 the department, and he was not assigned a vehicle until a year after his appointment. Even then he was frequently required to use his personal vehicles because of the inoperable conditions of the sheriff's units.
The state presented for its case in chief the testimony of twenty-seven witnesses, and on rebuttal an additional ten witnesses. These included various sheriff's office employees, a forensic document examiner, two employees of the office of motor vehicles, four persons whose license plate numbers matched those on some of Jones' charge tickets, the Gibson, Louisiana justice of the peace, the Gibson constable, and a captain for the Louisiana Department of Wildlife and Fisheries. The sheriff's department employees testified that Jones had been listed on the official roster as working in the motor pool and then the marine patrol, that he turned in few official complaints and offense reports, and that they were generally unaware of what duties Jones performed. They also testified that credit cards were only supposed to be used for official business but that as many as sixty-nine people in the department used office credit cards, and that Sheriff Rozands had no written rules regulating their use. The document examiner testified that Jones himself had signed most of the charge tickets, and other witnesses stated that they were unaware of Jones' patrolling the streets or waters in the Gibson area.
The defense presented sixteen witnesses: twelve residents of the Gibson area in addition to a former sheriff's office employee, a Houma businessman, the former sheriff of Assumption Parish, and Jones himself. The residents testified that they were well aware of Jones' role as deputy sheriff, that he often responded to their calls for assistance, that his response time was quicker than that of deputies called from Houma, that he was effective in solving some problems with which the other deputies would not become involved, and that he regularly patrolled the Gibson area in either his own vehicle or a sheriff's unit. Others testified that Jones' units had several times broken down and had to be towed, and that Jones had frequently been seen with Sheriff Rozands at Rozands' farm where the sheriff often conducted department business. Furthermore, Sheriff Murray Landry qualified as an expert in the field of law enforcement specializing in the operation and supervision of a rural sheriff's office. He attested to the valuable role that the local "resident" deputy played within a rural sheriff's department. According to Sheriff Landry the function of a local "resident" deputy was to operate informally within a particular community to avoid and settle disputes and problems rather than to make arrests and official complaints. He also testified that he had seen Jones in Rozands' company at official legislative functions in Baton Rouge.

ASSIGNMENTS OF ERROR
This brief discussion of the evidence suffices to place in perspective the two trial court rulings which are assigned as error. Jones raises as assignments of error the failure of the court to allow him to relate what Sheriff Rozands had told him concerning his duties and his use of credit cards, and the failure of the court to allow Sheriff Landry, Jones' expert witness, to testify as to the value of services of special deputies such as Jones. Jones argues that these exclusions were improper and that such rulings deprived him of his right under both federal and state constitutions to present a defense.
For both public payroll fraud and theft a relevant inquiry for the jury is the defendant's intent. This inquiry necessarily brings into consideration the defendant's state of mind because the charge of public payroll fraud proscribes knowingly receiving pay for services grossly inadequate for the pay received,[5] and the charge of theft necessarily encompasses taking of another's *549 property by fraudulent means, that is, with knowledge that one is not authorized to do so.[6] Jones' defense to both charges rested on his claim that he performed his duties and used sheriff's department credit cards just as he was directed to by Sheriff Rozands and that the formal designation of his job assignment on sheriff's office records was irrelevant. Indeed he was never told nor aware that for organizational purposes he was carried as assigned to the motor pool and later the marine patrol. Although Jones was permitted at trial to answer certain questions as to whether he was acting pursuant to Sheriff Rozands' orders, he was never able to explain to the jury exactly what those instructions were, either generally or specifically, because the state objected on the grounds of hearsay, and the court sustained the objections.
This court has adopted Professor McCormick's definition of hearsay:
"Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter."
State v. Martin, 356 So.2d 1370, 1373 (La. 1978) (quoting McCormick, Evidence § 246 (Cleary ed.1972)). Hearsay evidence is inadmissible[7], unless it fits within one of the recognized exceptions to the hearsay rule. State v. Smith, 285 So.2d 240 (La.1973). Conversely, if an extrajudicial statement is offered not as an assertion to prove the truth of the matter, then it is not hearsay, and it is admissible so long as it meets the criteria for admission of any evidence, i.e., relevance, materiality, and risk of undue influence. Pugh, Louisiana Evidence Law 415 (1974). However, determinations concerning the admissibility of extrajudicial statements used non-assertively are complicated by the fact that such statements often contain both impermissible hearsay and permissible nonhearsay. McCormick offers the example of the inspector whose extrajudicial statement that tires were defective is acceptable if offered to prove that the listener had notice of the defective condition when such notice is relevant, but improper if used to prove that the tires were in fact defective. See McCormick, Evidence § 249 (3d ed.1984). If a nonassertive fact is relevant and material to the issue at hand, then the extrajudicial statement may be admitted despite its impermissible hearsay aspects, subject to a limiting instruction by the court, unless the danger of its improper use substantially outweighs the need for the evidence for the proper purpose. Id.
In the instant case Jones sought to offer the statements made to him by the out-of-court declarant, Sheriff Rozands, for the purpose of rebutting the state's contention that he knowingly received pay for grossly inadequate services and that he took property valued at more than $500 with felonious intent. For this purpose the testimony was not hearsay because it was arguably not offered as an assertion for the truth of the matter of Jones' job assignments, but rather as a nonassertive *550 fact (simply, that the statements were made by the sheriff to Jones) to prove its effect on Jones' state of mind. It was relevant and material to show Jones' belief that he was authorized to act as he did, that he had not knowingly performed grossly inadequate services for his pay, and that he had not knowingly or intentionally misappropriated public funds for personal use when he charged gas to the sheriff's office credit cards. Even though the testimony may also have had an impermissible hearsay aspect,[8] such a risk was clearly outweighed by the relevance and materiality of the fact that it was said and for the consequent effect it may have had on Jones. As a defendant charged with criminal activity, Jones had the right to rebut the inference that he acted with criminal intent. Refusal to admit the testimony was prejudicial to Jones, who was thus not able to present his most potent defense, that he performed his job the way his boss told him to.
In State v. Webb, 372 So.2d 1209 (La. 1979), we reversed a defendant's conviction for simple burglary after the trial court had refused his testimony relating statements made to him by a bystander that the building was to be demolished and that the owner did not object to fixtures being removed. We concluded that the testimony was being offered to prove the defendant's state of mind which he was justified in presenting, to show lack of criminal intent. Similarly, in State v. Shoemaker, 500 So.2d 385 (La.1987), we reversed a conviction for distribution of marijuana after the defendant was not allowed to testify as to statements made to him by an undercover officer which would bear on his defense of entrapment. We concluded that since these statements were offered not to show the truth of the matters asserted but to show the contents of the conversation, they should have been allowed. See also State v. Weiland, 505 So.2d 702 (La.1987); State v. Martin, 458 So.2d 454 (La.1984); State v. Roche, 341 So.2d 348 (La.1976); and Pugh, Louisiana Evidence Law 415 n. 8 (letter written to defendant admissible to show defendant's belief that he had authority to sell and that he did not act with criminal intent). Similarly, in the instant case, Jones' testimony regarding Sheriff Rozands' extrajudicial statements should have been admitted, perhaps with a limiting instruction to the jury. Jones' testimony reporting statements made to him by Sheriff Rozands concerning Jones' duties as a deputy and his use of credit cards was not hearsay, because it was not offered as an assertion to show the truth of the matters asserted therein, and the district court erred by excluding it.
Other testimony which the court disallowed was opinion testimony by Sheriff Landry regarding the value of services rendered by a "resident" deputy such as Jones. The defense asked: "Sheriff, do you think you're qualified to render an opinion on the worth, and merit, and value of certain services rendered by certain police officers?" Before Landry was able to respond, the district attorney objected. Thereafter, out of hearing of the jury, the parties debated the admissibility of Landry's opinion. The defense attorney stated that he planned to ask Sheriff Landry "his opinion on the value of certain services performed by certain officers," and that he also planned to ask explicitly whether or not Jones' services were grossly inadequate for the pay he received.
The trial judge refused to allow him to testify as to either the value of special deputy services or the adequacy of Jones' services, and the court of appeal did not distinguish between the two, ruling that *551 exclusion of the testimony was not error because the question of whether Jones' services were grossly inadequate for the pay he received was for the jury to decide. State v. Jones, 540 So.2d at 1138. For the brief reasons which follow, we conclude that while the trial judge may have been correct to deny opinion testimony regarding the gross inadequacy of Jones' services, the trial judge was wrong to exclude expert opinion about the monetary value of deputy services generally.
In State v. Wheeler, 416 So.2d 78, 81 (La.1982), this court recognized three variables to consider in deciding whether to admit expert testimony: 1) whether the evidence relates to matters well within the jury's understanding and is therefore not truly expert testimony; 2) whether the opinion is abstract and indirect; and 3) whether the opinion relates to an ultimate issue rather than a collateral matter. We noted that as testimony approaches the hub of an issue, the more constrained we should be to prefer concrete details over general inferences. Id. at 80 (citing McCormick on Evidence, § 12, p. 26 (1972)).
Weighing these variables in the instant case, we conclude that the expert testimony should have been admitted. First, Landry had qualified as an expert in rural law enforcement. His valuation of special deputy services was truly expert in nature in that it related to matters beyond the general understanding of the jury. Second, such testimony was neither abstract nor indirect. Landry could have assigned specific monetary value to the services of a special deputy through answers to hypothetical questions which would have aided the jury in making its ultimate decision on whether Jones' services were grossly inadequate, considering his pay. Finally, although Landry's testimony would have had bearing on the resolution of the ultimate issue, it would not necessarily have decided it. In other words Landry could have used his expertise to place a monetary value on hypothetical services without offering an opinion on the "adequacy," "inadequacy," or "gross inadequacy" in relation to pay, of Jones' services. So while Sheriff Landry's testimony would have approached the central issue at trial, the ultimate determination would have been left to the jury. If the state chooses to define a crime respecting pay and services in terms of "inadequacy," it must suffer having experts render opinions which bear on that issue in order to assist the jury in making its final decision. Therefore, the trial judge may have been correct in not allowing Sheriff Landry to offer his opinion on the adequacy of Jones' services because that was the ultimate issue, and it was properly left for the jury. However, the trial judge was surely wrong not to let Landry testify about the monetary value of special deputy services.
Defendant was constitutionally entitled to present a defense. He was entitled to relate what Sheriff Rozands told him about use of the credit cards. Furthermore, his best opportunity to have the jury acquit him of public payroll fraud was in his testifying concerning what Sheriff Rozands told him at the outset of employment concerning his job duties and use of credit cards, and his consequent state of mind as he went about performing those duties and using the credit cards. Denying him the opportunity to relate to the jury what the Sheriff told him concerning his duties and use of department credit cards, and barring expert testimony on the value of special deputy services, constituted prejudicial error such as warrants reversal of the conviction and the ordering of a new trial.
It is appropriate to address assignments of error which are likely to arise anew. One such is defendant's fourth assignment of error wherein he contends that R.S. 14:138(1) is unconstitutionally vague. This court addressed that issue in State v. Gisclair, 363 So.2d 696 (La.1978) and resolved it adversely to defendant's position. In Gisclair we considered the statutory language of R.S. 14:138(2) which defines as public payroll fraud a public officer's carrying the name of an employee on a public payroll with knowledge that the employee is receiving compensation "for services grossly inadequate for such payment or compensation." We determined that the statutory language offered a clear and definite *552 standard of conduct which could easily be understood and applied and was therefore not unconstitutionally vague. The Gisclair decision is controlling in the instant case. We reaffirm that decision as applied to identical language which appears in R.S. 14:138(1) regarding an employee who receives compensation for services which are "grossly inadequate" for the compensation received and again conclude that the language is not unconstitutionally vague.

DECREE
For these reasons the convictions and sentences are reversed, and the case is remanded to the district court for retrial.
REVERSED; REMANDED FOR NEW TRIAL.
DENNIS, J., concurs with reasons.
NOTES
[1] Originally Jones and Sheriff Rozands were indicted for payroll fraud. After Rozands' death, the indictment against Jones was replaced by a bill of information charging the same public payroll fraud offense and a charge of theft of over $500.
[2] We find no need to reach defendant's assignments of error # 3, error in failing to grant a new trial after the state, in its argument to the jury, misstated the facts, and # 5, error in failing to find that the bill of information lacked essential elements of the crime charged. Assignment of error # 4 will be briefly discussed in the opinion proper.
[3] Jones had been elected constable from Ward 8 of Terrebonne Parish in 1972 and served until 1984 when he was unseated. He had also served as a special deputy sheriff at some point in time before 1984.
[4] Although Jones held his position as deputy sheriff until April 1987, the indictments cite only the time period from July 1, 1984, until December 31, 1986.
[5] R.S. 14:138 provides:

Public pay roll fraud is committed when: (1) Any person shall knowingly receive any payment or compensation, or knowingly permit his name to be carried on any employment list or pay roll for any payment or compensation from the state, for services not actually rendered by himself, or for services grossly inadequate for the payment or compensation received....
[6] La.R.S. 14:67 provides in part:

Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
See also State v. Rives, 193 La. 186, 195-97, 190 So. 374, 377-78 (1939) ("An evil or felonious intent is an essential ingredient or element of the crime of larceny.... [I]n such cases, where it is proved or admitted that the taking and appropriation were knowingly done and the defense is that the accused had a legal right to take and appropriate the property ... testimony tending to show good faith on the part of the defendant is likewise admissible for [rebutting the inference that the taking was done with fraudulent intent.]"); State v. Franques, 156 La. 462, 100 So. 682 (1924); and State v. Authement, 139 La. 1070, 72 So. 739 (1916).
[7] La.R.S. 15:434 (Repealed by Acts 1988, No. 515 § 8, eff. Jan. 1, 1989). Although this case was decided under the prior law, Comments to the new Code of Evidence effective January 1, 1989, provide that the definition of hearsay is "consistent with the traditional definition of hearsay employed by Louisiana courts," and "makes clear that a non-assertive use (to prove anything other than the truth of the out-of-court statement) is not hearsay." La.C.E. art. 801(C) Comment to Article 801(C).
[8] We say the testimony may have had an impermissible hearsay aspect, and earlier, that the sheriff's testimony arguably was not offered to prove the truth of the sheriff's assertion, by way of concession for the purpose of argument. In fact, however, what the sheriff told defendant about his duties (and permission to use credit cards) may well have been the very creation of defendant's duties, proof by defendant's testimony of the communicated duties being direct and permissible nonhearsay evidence. See McCormick, Evidence § 249, at 732-33, n. 4 (3d ed. 1984) (An agent's testimony as to the principal's statement granting authority for him to act as agent is not evidence of assertions but utterances to which the law attaches duties and liabilities and is therefore nonhearsay.).