558 So.2d 1346 (1990)
STATE of Louisiana
v.
Lionel WALKER.
No. 88-KA-2567.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1990.
Harry F. Connick, Dist. Atty. and Kathleen Garvey, Asst. Dist. Atty., New Orleans, for plaintiff.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant.
*1347 Before KLEES, WARD and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Defendant, Lionel Walker, was charged by grand jury indictment with first degree murder (while in the perpetration or attempted perpetration of aggravated rape), a violation of La.R.S. 14:30. On joint motion by the state and defense, a lunacy commission was appointed. The trial court found the defendant incompetent to proceed to trial. At a later date he was found competent to proceed. The defendant's motions to suppress were heard and denied and he withdrew his former plea of guilty and pled not guilty and not guilty by reason of insanity. After a trial a twelve member jury found the defendant guilty as charged. He was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. On appeal defendant raises one assignment of error.
The record reflects that on Saturday morning, June 15, 1985, between 10 and 11 a.m., Emmala Thomas became concerned about the victim who she had been trying to reach on the telephone. Each time she called she received a busy signal. She had the security guard on duty give her entry to the victim's apartment. The victim was an elderly woman who lived alone in the Tivoli Apartment Complex. She found the dead body of the victim lying face down on her bedroom floor. A police investigation revealed that she had been raped, sodomized and strangled with a telephone cord. The apartment had been ransacked. The victim had last been seen alive about 8:45 in the morning, when her neighbor Dennis Williams rode up in the elevator with her. No usable fingerprints were found at the apartment.
A review of the visitor sign-in book at the Tivoli Apartments revealed that defendant had come into the complex at 9:00 a.m. that morning and had never signed out. Defendant, according to his confession, was involved in a homosexual relationship with Mr. Williams, the victim's neighbor. He visited Mr. Williams frequently at the Tivoli Apartments. Mr. Williams made special arrangements for defendant to get in and out of the building. Because defendant could not read and write very well Mr. Williams asked the security guards to sign his name on the register.
It was not until August 12, 1985, when defendant was being held on an unrelated DWI charge in Central Lockup that the investigating officers interviewed him. According to Detective Michael Rice, when he first told the defendant that the interview would concern the murder of Edna Brown the defendant looked surprised and blurted out that he had murdered her. The officer informed defendant of his Miranda rights including the right to remain silent. Defendant indicated that he understood his rights and waived them. Defendant then gave a tape recorded description of the killing which was admitted into evidence and heard by the jury when defendant was tried for this crime.
A review of the record reveals that there are no errors patent.
On appeal, defendant argues that the trial court erred in refusing to allow Dr. Mark Zimmerman to testify as to whether the defendant could have understood his rights or the words used by the interrogating officers.
Dr. Mark Zimmerman, a psychologist qualified as an expert, came to testify on behalf of the defendant. His tests had shown that the defendant had a verbal IQ of 69, a performance IQ of 66, and a full-scale IQ of 66, placing him in a category termed "mildly or educably mentally retarded." Dr. Zimmerman's opinion was that the defendant could perform at the level of a nine and a half year old.
This opinion was confirmed by the state psychiatrist, Doctor Kenneth Ritter. Dr. Ritter's earliest examination in January of 1986 disclosed an IQ in the forties or fifties and though the defendant scored better in later tests he never showed up better than "mildly retarded", with a performance equaling that of an eleven year old.
*1348 Defense counsel maintains that she wished to elicit testimony as to matters affecting the weight the jury might give to defendant's confession in light of his performance level. When she attempted to do so a State objection was sustained. The trial judge told defense counsel that this information went to the predicate required for the confession, and that defense counsel had had sufficient opportunity to cross-examine anyone she wanted to on the predicate before the confession was published to the jury.
Defense counsel cites La.C.Cr.P. art. 703(G) to argue that the trial court erred in its ruling. She contends that the second paragraph of art. 703(G) sets out the defendant's right to elicit this testimony.
G. When a ruling on a motion to suppress a confession or statement is adverse to the defendant, the state shall be required, prior to presenting the confession or statement to the jury, to introduce evidence concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement.
A ruling made adversely to the defendant prior to trial upon a motion to suppress a confession or statement does not prevent the defendant from introducing evidence during the trial concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement.
The trial court sustained the motion apparently on the basis that the question sought testimony concerning the voluntary and knowing nature of the confession and as such was not proper after the State had laid its predicate. However, the question as phrased points out the narrow and almost impossible distinction between questions inquiring into the voluntary and knowing nature of a confession and questions inquiring of the circumstances surrounding the confession.
Based on your examination of Lionel Walker and your reading of this document, if you were given a hypothetical situation where this document and the words included on it were read, just read, no explanation whatsoever to Lionel, in average fashion as if you would be reciting it or reading it to the average person, do you feel that he would have been able to understand everything, the theories and the terms that are included in that document?
The trial court has great discretion in rulings concerning the examination of witnesses. State v. Murray, 375 So.2d 80 (La.1979). In order to reverse a conviction on the claim of improperly excluded evidence a reviewing court must find the trial court erred in refusing to allow the admission of the evidence in question and the defendant was prejudiced by that error. State v. Eaton, 524 So.2d 1194, 1204 (La. 1988). To determine whether a defendant was prejudiced a reviewing court should decide if there is a reasonable probability that the exclusion of the evidence in question "might have contributed to the conviction" and if the error was "harmless beyond a reasonable doubt". Id. at 1204, citing State v. Gibson, 391 So.2d 421 (La. 1980); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
The trial court allowed defense counsel to elicit testimony from Dr. Zimmerman to the effect that the defendant had the mental and verbal capacity of a nine and a half year old child. Defense counsel specifically questioned the witness on the defendant's ability to communicate and to understand large words such as "intimidation" and "coercion". The witness responded that there was no "yes" or "no" answer to this question. When defense counsel attempted to have the witness render an opinion as to whether the defendant properly understood his Miranda warning, the State objected. The trial court's ruling, that the sought testimony concerned the voluntary and knowing nature of the confession and as such was not proper after the State had laid its predicate, was not clear error.
*1349 Even if we had found error in the trial court's evidentiary ruling, the defendant's conviction must be upheld unless he demonstrates prejudice attributable to the error. State v. Humphrey, 412 So.2d 507 (La.1982); State v. Johnson, 343 So.2d 155 (La.1977). A defendant's conviction should be upheld if the reviewing court finds the error complained of is harmless beyond a reasonable doubt. State v. Gibson, 391 So.2d 421 (La.1980).
The defendant contends that the excluded testimony would detract from the weight given by the jury to the confession. The excluded testimony would present nothing new on this point. The jury already knew the defendant was mildly retarded and possibly could not understand technical words. The defendant's confession transcript indicates he did understand his Miranda warnings.
The excluded evidence presented nothing new or material to the determination of the defendant's guilt or innocence. State v. Banks, 412 So.2d 1025 (La.1982). Whether the defendant understood his Miranda warning simply does not detract from the trustworthiness of the confession itself. We do not believe that the weight accorded by the jury to a taped statement, in the defendant's own voice, played in open court would be affected by allegations of a faulty Miranda warning.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.