632 So.2d 1213 (1994)
STATE of Louisiana, Appellee,
v.
Raymond TATE, Appellant.
No. 25765-KA.
Court of Appeal of Louisiana, Second Circuit.
February 23, 1994.
Rehearing Denied March 24, 1994.
*1215 John W. Montgomery, Minden, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, James M. Bullers, Dist. Atty., Whitley R. Graves, Asst. Dist. Atty., Minden, for appellee.
Before LINDSAY, VICTORY and WILLIAMS, JJ.
VICTORY, Judge.
Raymond Tate, found guilty of one charge of possessing cocaine, in violation of LSA-R.S. 40:967(F)(1), was sentenced to 20 years imprisonment at hard labor and fined $50,000. On appeal, he complains that the evidence adduced at trial was insufficient to support a conviction, that an evidentiary ruling made by the trial court was in error and that an excessive sentence was given. For the reasons stated, we affirm the conviction and the sentence.

FACTS
On September 10, 1992, Raymond Tate and a friend, Marcus Hill, drove from Minden, Louisiana, to Houston, Texas, arriving at approximately 5:00 p.m. They drove straight to Tate's grandmother's house, where several people were gathered, including Tate's grandmother, Rose Tate, his grandfather, numerous cousins, and friends.
According to Tate, the sole purpose of the trip was to locate and purchase used shock absorbers for a 1984 Lincoln automobile. Tate testified that Hill asked if he could accompany him to Houston to visit a friend, Randy Tims. Tate stated that while in Houston he made only one telephone call, to a friend, Joe, at Jesse's Wrecking Yard, to inquire about used shock absorbers. He testified that he did not leave his grandmother's house the entire time that he was in Houston, and that he knew nothing about the cocaine later found by police.
Hill, testifying for the State, told the jury that the purpose of the trip was to purchase cocaine. He testified that he was not aware of Tate's telephone call to the wrecking yard, but stated that he overheard telephone calls made by Tate to a local drug dealer. Hill stated that after these telephone calls were made, an unknown individual visited Tate at the house, and the sale of cocaine occurred at this time. Hill testified that he left the house twice; first, with Tate to buy fish at a local market, and then with Tate's cousin to go to a grocery store.
*1216 At approximately 8:00 p.m., Tate and Hill left Houston to return to Minden. Hill stated that when they left Houston the cocaine was located in the armrest between the front seats of the car, but when they arrived in Nacogdoches, Texas, Tate asked him to place the cocaine in the crotch of his pants because Tate assumed that if they were stopped, the police would probably search him rather than Hill, due to Tate's prior drug convictions.
Upon returning to Minden, at approximately 1:55 a.m., on September 11, 1992, Officers Hank Haynes and Dan Weaver of the Minden City Police Department stopped Tate and Hill, upon information that an outstanding warrant for Tate's arrest had been issued for a Texas parole violation. They conducted "pat down" searches of both men. Officer Weaver discovered a brown paper sack, filled with six packets of cocaine, in the crotch of Hill's pants. Both men were charged by bill of information with two counts of possession of cocaine.
Following a trial by jury, Tate was found guilty of count one, possession of greater than 28 grams but less than 200 grams of cocaine, in violation of LSA-R.S. 40:967(F)(1)(a). He was fined $50,000 and sentenced to 20 years imprisonment at hard labor, without benefit of parole, probation or suspension for five years.
On appeal, Tate complains that: (1) the evidence adduced at trial was insufficient to support the conviction; (2) the trial court erred by excluding, as hearsay, certain testimony of the defendant's grandmother, Rose Tate, regarding a telephone conversation which she overheard between Tate and a third party; and (3) the sentence is excessive.

DISCUSSION

SUFFICIENCY OF THE EVIDENCE
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Washington, 606 So.2d 838, 841 (La.App. 2d Cir.1992), writ denied, 612 So.2d 56 (La.1993); and State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La. 1992). The Jackson standard, now codified as part of LSA-C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); Washington, supra; and State v. Lott, 535 So.2d 963 (La. App. 2d Cir.1988).
Thus, the elements of the offense are that: (1) Tate knowingly or intentionally possessed cocaine; and (2) the amount of cocaine possessed was between 28 and 200 grams. LSA-R.S. 40:967(F)(1)(a).
To satisfy the possession element, the prosecution is not required to prove "actual" or "physical" possession. It is sufficient to show that the defendant had "constructive" possession of the cocaine. Constructive possession has been defined as having dominion and control over the contraband, and having knowledge of the substance. State v. Washington, 597 So.2d 1084 (La.App. 2d Cir.1992); State v. Harris, 597 So.2d 1105 (La.App. 2d Cir.1992). A defendant may be found to have been in joint possession, if the cocaine was in the physical possession of another, and if the defendant willfully and knowingly shared with the other the right to control the drug. State v. Kingsmill, 514 So.2d 599 (La.App. 4th Cir.1987); State v. Herndon, 513 So.2d 486 (La.App. 2d Cir.1987). The determination of whether there is possession sufficient to convict depends on facts peculiar to each case. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Spates, 588 So.2d 398 (La.App. 2d Cir.1991).
*1217 Tate and Hill arrived in Houston at 5:00 p.m., and left to return to Minden only three hours later, without automobile parts. Tate testified that he did not make any effort to contact Houston automobile parts dealers before leaving Minden, nor did he make prior arrangements to have them stay open past typical working hours (i.e., past 5:00 p.m.). The jury concluded that the true motive behind the trip was not, as Tate testified, to purchase automobile parts; rather, as Hill stated, it was to purchase cocaine.
Although Tate denied having purchased the drug or having any knowledge of its presence, the jury obviously rejected his testimony and accepted Hill's. As previously noted, Hill witnessed the defendant telephoning a drug dealer. Thereafter, an unidentified man visited Tate at his grandmother's house, and according to Hill, the drug sale transpired at this time. Tate admitted leaving Minden with $1200 cash (which he claimed had been given to him by his mother to buy automobile parts), and returning to Minden without this money. Although Tate attempted to explain this by testifying that he left the money with his grandmother, Rose Tate, to enable her to purchase the used automobile parts, the jury clearly rejected his testimony and that of his grandmother.
Further, Hill stated that the defendant knew that the cocaine was in the car. He recalled that the cocaine was initially stored in the arm rest between the front seats. According to Hill, as they drove through Nacogdoches, Texas, where they had been stopped and detained by police officers on their way to Houston, Tate gave Hill the cocaine, and told him to conceal it in his crotch. Hill did as Tate instructed. That Tate took responsibility for concealing and hiding the cocaine, indicates his dominion and control over the drug. The possession element has been satisfied.
The jury afforded credibility to Hill's testimony and not Tate's, and concluded that the purpose for traveling to Houston was to purchase cocaine, that Tate was aware of it and had constructive possession of the cocaine. Our authority to review questions of fact in criminal cases does not extend to credibility determinations made by the jury. It is the province of the jury to assess the credibility of witnesses, and this court accords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. LSA-La. Const., Art. 5, § 5(C); State v. Trosclair, 443 So.2d 1098 (La.1983), cert. dismissed, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984); State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987); State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992); State v. Emerick, 499 So.2d 195 (La.App. 2d Cir.1986).
The record reveals that the packets discovered by Officer Weaver contained between 28 and 200 grams of cocaine, and that the second element of this crime was proven beyond a reasonable doubt. Mr. Brian Keith Watson, a chemist at North Louisiana Crime Lab, was qualified at the trial as an expert in chemical analysis of controlled dangerous substances. He analyzed the contents of each of the six packages, and concluded that they all contained cocaine, weighing a total of 169.39 grams.
After viewing the evidence, both direct and circumstantial, in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. The jury made credibility determinations which were not clearly erroneous and can not be disturbed. This assignment of error is without merit.

HEARSAY TESTIMONY
In the second assignment of error, Tate claims that the trial court erred by excluding, as hearsay, certain testimony of Rose Tate, concerning whether she heard him speak of anything other than automobile parts during a telephone conversation that took place at her house. We find that this assignment has merit. However, we find the error harmless *1218 and insufficient to warrant reversal of the conviction.
It is undisputed that Tate made at least one telephone call during the time that he was at his grandmother's house. Rose Tate testified that she overheard this conversation. On direct examination, defense counsel questioned her about the telephone conversation, in the following manner:
Q Did your grandson, Raymond Tate, in this courtroom here, did he make a telephone call in your presence?
A Yes, he did, yes, he made a call.
* * * * * *
Q And who did he call?
A He called the car dealer-to see about a part for his car.
Q Now when that conversation was, did he ever mention on that telephone call anything about any other thing besides car parts?
A No, he didn't.
The prosecution objected, contending that the answer to the last question called for hearsay, and was inadmissible. Defense counsel countered by arguing that the statement was not submitted for the truth of the matter asserted, but that Rose Tate had firsthand knowledge of the communication that had taken place in her presence. The trial court sustained the state's objection, and admonished the jury to disregard Rose Tate's response to the last question.
Generally, a witness with personal knowledge is allowed to relate what occurred or did not occur in her presence, as long as the evidence is relevant and not made inadmissible by the hearsay rule or some other rule of law. L.C.E. Arts. 402, 602, 802. "Hearsay" is a statement other than one made by the declarant while testifying at the present trial or hearing offered in evidence to prove the truth of the matter asserted. L.C.E. Art. 801. As noted in State v. Jones, 558 So.2d 546, 549 fn. 7 (La.1990), the definition of hearsay under the Louisiana Code of Evidence is consistent with the traditional definition of hearsay employed by Louisiana Courts. That traditional definition was from McCormick, Evidence § 246 (Cleary ed. 1972):
Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.
Hearsay evidence is regarded as being unreliable because it is based on statements made by persons who are not before the court, have not been sworn, and are not available for cross-examination. Kikendall v. American Progressive Insurance Company, 457 So.2d 53, 56 (La.App. 1st Cir.1984) (citations omitted). However, if a statement is not introduced to prove the truth of the matter asserted, then that statement, by definition, is not hearsay. State v. Hicks, 607 So.2d 937, 946 (La.App. 2d Cir.1992) (citations omitted).
In this case, Rose Tate's response, "No, he didn't," is not hearsay. By definition, a hearsay statement is offered to prove the truth of the matter asserted in the statement. Rose Tate's testimony was not offered to prove the truth of the matter asserted, but to show the lack of discussions about drugs. Since Rose Tate never stated exactly what was said by the defendant, but merely summarized the gist of the telephone call, we do not know exactly what she would have testified the defendant said on his end of the call. Assuming that she would have stated defendant made statements or asked questions during the call about the availability and cost of the automobile parts, clearly such statements would not have been offered to prove the truth of the matter asserted (i.e., if automobile parts were actually available and at what cost; but, merely to show the conversation was about automobile parts and not about drugs).
It is well settled that a statement is not hearsay, when it is offered to show that it was in fact made or that a conversation took place. See, e.g., State v. Lobato, 603 So.2d 739, 746 (La.1992); State v. Jones, 558 So.2d 546, 550 (La.1990) (citations omitted); State v. Huizar, 414 So.2d 741, 749 *1219 (La.1982). Likewise, negative evidence, such as silence, or the failure to speak or act, is normally not considered hearsay when offered as the basis for an inference that conditions were such as would not evoke speech or action in a reasonable person. McCormick, Evidence § 250 (Cleary ed. 1972). This rule was implicitly adopted by the Louisiana Supreme Court in State v. Childers, 196 La. 554, 199 So. 640 (1940).[1] In that case, the defendants were on trial for forging a will. One of the defendants claimed that the will was drawn up by a certain lawyer, who had since died. A clerk, who worked in the deceased lawyer's office, was allowed to testify that the lawyer never mentioned having drawn the alleged will. In finding that the evidence was not hearsay, the Louisiana Supreme Court stated:
The answer elicited by the question was not hearsay. The witness was not requested to repeat what Mr. Robertson [the deceased attorney] had said but was asked to state as a fact whether anything had been said. The answer to the question was "No". While this testimony was negative in character it was relevant and admissible as a circumstance tending to refute Mr. Roland's [the defendant's] statement that Mr. Robertson had drawn the form of a will and also tending to show the falsity of the defendant Roland's statement as to how the will was confected.
Id., 199 So. at 645.
Further, the ordinary concerns about the reliability of hearsay testimony are not present here. As previously noted, the hearsay rule is designed to eliminate testimony from an out-of-court declarant who is not subject to cross-examination and whose demeanor can not be scrutinized by the jury. When the declarant is also a witness at the trial and is cross-examined, the detrimental impact of this type of evidence is greatly reduced. State v. Cameron, 485 So.2d 599, 602 (La. App. 4th Cir.1986), citing State v. Whitlock, 454 So.2d 871 (La.App. 4th Cir.1984), appeal after remand, 475 So.2d 1112 (La.App. 4th Cir.1985). Tate was a witness at the trial, testified extensively about his claimed search for used automobile parts, and recalled telephoning a used parts dealer while in Houston, to inquire about shock absorbers for his Lincoln automobile. The State was able to cross-examine Tate about the telephone call.
Although the trial court erred by sustaining the objection to Rose Tate's response, and instructing the jury to disregard it, we find the error to be harmless. LSA-C.Cr.P. Art. 921. In order to reverse a conviction on the basis of improperly excluded evidence, a reviewing court must find that the defendant was substantially prejudiced by the error. State v. Cutwright, 626 So.2d 780, 785 (La.App. 2d Cir.1993), citing State v. Walker, 558 So.2d 1346, 1348 (La.App. 4th Cir.1990). To determine whether a defendant was prejudiced, a reviewing court must decide if there is a reasonable probability that the exclusion of the evidence in question might have contributed to the conviction or if the error was harmless beyond a reasonable doubt. Id., supra.
After review of the record, we conclude that the trial court's error was harmless beyond a reasonable doubt and did not contribute to the conviction. Tate testified extensively on his own behalf about the very conversation at issue, thus the jury was clearly aware of his contentions about the telephone call. Although the jury was instructed to disregard her response, "No, he didn't," Rose Tate's answer to the previous question, which was not objected to or stricken, clearly told the jury her contentions regarding the content of the telephone call. Furthermore, the stricken answer would not have shown that the defendant lacked knowledge of the cocaine and/or had no dominion or control over it. This assignment has no merit.

EXCESSIVE SENTENCE
Tate was fined $50,000 and sentenced to 20 years at hard labor, five years of which is to be served without benefit of parole, probation or suspension of sentence. A timely motion to reconsider sentence was filed by Tate, as required by LSA-C.Cr.P. Art. 881.1, and denied. *1220 On appeal, Tate complains that his sentence is excessive.
The Felony Sentencing Guidelines were in effect when the defendant was sentenced on June 14, 1993. The guidelines are mandatory, but only in the sense that the trial court must consider them and, if gross deviation is called for the trial court must state for the record the reasons for departure which shall specify the mitigating or aggravating circumstances, and the factual basis therefor. State v. Smith, No. 93-K-0402, 1993 WL 527405 (La. December 10, 1993).
While the sentencing court must consult the guidelines, it is at liberty to impose a more severe sentence, providing that the statutory aggravating circumstances supporting deviation from the guidelines are stated on the record. La.S.G. § 209(A)(4)(b); State v. Smith, supra; State v. Perow, 607 So.2d 888 (La.App. 2d Cir.1992). One aggravating circumstance is sufficient to justify upward departure from the guidelines grid.
The presentence investigation report placed Tate within cell 3-A of the sentencing grid, which recommends a 10- to 12-year sentence. However, the court made an upward departure, and sentenced Tate to 20 years, giving several reasons for the departure.
One of the factors mentioned by the judge was that Tate was on parole at the time of the offense. However, this is not an appropriate aggravating factor justifying upward departure since this was taken into account in calculating his criminal history index. La.S.G. § 205C(3)(d). The seriousness of the offense mentioned by the judge is also not an appropriate aggravating factor because the guidelines already take into consideration the nature and seriousness of the offense. La.S.G. § 401B.
However, the sentencing court's consideration of Tate's truthfulness, character and attitude was proper since these factors fall within the catchall provision of La.S.G. § 209(B), which allows the sentencing court to consider any other relevant aggravating circumstances which distinguish the case from the typical case. Tate's lack of truthfulness in his testimony is probative of his attitude toward society and his prospect for rehabilitation. However, these character traits cannot serve as the sole aggravating factor justifying the upward departure. They must be assessed in light of other pertinent sentencing factors and may not, standing alone, be used to enhance the sentence of a defendant whose testimony is deemed false. United States v. Dunnigan, ___ U.S. ___, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993); and United States v. Grayson, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); State v. Hampton, 595 So.2d 831 (La.App. 2d Cir.1992), writ denied, 598 So.2d 375 (La.1992); State v. Kennon, 591 So.2d 757 (La.App. 2d Cir.1991); State v. Shelton, 545 So.2d 1285 (La.App. 2d Cir.1989), writ denied, 552 So.2d 377 (La.1989); and State v. Taylor, 535 So.2d 1146 (La.App. 2d Cir.1988).
The trial judge read the defendant's prior criminal record into evidence at the sentencing hearing, which consisted of prior felony convictions for possession of cocaine, aggravated possession of cocaine of over 400 grams, and several misdemeanor convictions. All together, the defendant's criminal history index score is at least 7.25, which under La.S.G. § 209(B) is an aggravating factor justifying the upward departure. This assignment has no merit.
Having found the court properly departed from the guidelines grid range, we evaluate the sentence for excessiveness under the constitution. Whether the term of imprisonment is too severe depends upon the circumstances of the case and the background of the defendant. State v. Coleman, 605 So.2d 231 (La.App. 2d Cir.1992). For further discussion of the parameters applied in that determination, see La. Const. Art. 1, § 20; State v. Barberousse, 480 So.2d 273 (La.1985); State v. Square, 433 So.2d 104 (La.1983); and State v. Bonanno, 384 So.2d 355 (La.1980). In the present case, the punishment imposed is adequately supported by the record, and is not constitutionally excessive. In light of the defendant's extensive drug-related criminal history, the sentence does not amount to a needless infliction of *1221 pain and suffering and does not shock our sense of justice.

DECREE
For the reasons assigned, Raymond Tate's conviction and sentence are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before LINDSAY, HIGHTOWER, VICTORY, BROWN and WILLIAMS, JJ.
Rehearing denied.
NOTES
[1] See also, Latham v. Houston Land & Trust Co., 62 S.W.2d 519 (Tex.Civ.App.1933); Sloan v. Sloan, 32 S.W.2d 513 (Tex.Civ.App.1930); and Donovan v. Selinas, 85 Vt. 80, 81 Atl. 235 (1911).