619 So.2d 807 (1993)
STATE of Louisiana
v.
James Gale TYLER.
No. 92 KA 1161.
Court of Appeal of Louisiana, First Circuit.
May 28, 1993.
*809 Stephen P. Callahan, Attorney at Law, Houma, for plaintiff and appellee.
Romona Wallis, Indigent Defender Board, Houma, for defendant and appellant James Gale Tyler.
Before CARTER, LeBLANC and PITCHER, JJ.
LeBLANC, Judge.
James Gale Tyler was indicted with aggravated rape (where the victim is under the age of twelve), a violation of La.R.S. 14:42(A)(4). He pled not guilty and, after trial by jury, was convicted as charged. The court sentenced him to serve a term of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. Defendant has appealed, urging eleven assignments of error. Assignments of error numbers one, six, seven and eight specifically were abandoned by defendant on appeal.

FACTS
Defendant was charged with raping his stepdaughter in December of 1985, at the family home in Schriever, Louisiana. The victim was seventeen years old at the time of the trial in 1992. She testified that, about a week before her mother and defendant separated, defendant took her into one of the bedrooms at their home. He threatened to kill her mother if she told anyone, and then he removed her pants and underclothes and inserted his erect penis into her vagina. He appeared to be in a hurry, and the intercourse did not last very long. The victim indicated the experience was painful. When defendant finished, he again threatened to harm the girl's mother. Because of these threats and because the victim was afraid of defendant, she did not tell anyone about the offense, even after her mother and defendant separated. The victim finally told her mother about the rape when her mother questioned her after one of the victim's cousins accused defendant of rape.
Although the victim could not recall the exact date of the rape, she remembered she *810 was in middle school when the offense occurred and she remembered the offense occurred about a week before the separation. The victim's mother testified that she and defendant (her second husband) separated in December of 1985. Considering the victim's date of birth (April 9, 1974), the victim would have been eleven years old in December of 1985, when the offense occurred. The victim's mother explained that, after she was contacted by her sister on December 6, 1989, with allegations that defendant had raped two of her sister's daughters when they were younger, she questioned the victim to find out if anything similar had happened to her. During the conversation, the victim became upset and started crying as she detailed the incident described above.
The two cousins were twenty-two and twenty-three years old at the time of the trial. The oldest cousin (S.B.) testified that, starting when she was about eight years old and continuing until she was about fourteen years old, defendant regularly had sexual intercourse with her. The first time, defendant was babysitting S.B. and her siblings. Defendant came into the bedroom where S.B. was. He undressed himself and S.B. After initially being unsuccessful in inserting his penis into the child's rectum, defendant then partially inserted his penis into her vagina. S.B. testified that she was in shock and did not understand what was going on. She told defendant he was hurting her, and he replied that he would not hurt her. He also threatened to kill her aunt (the mother of the victim in the instant case), her mother, and her father if she told anyone. S.B. testified that defendant similarly raped her on other occasions until she was about fourteen years old. S.B. did not tell anyone about the offenses until she confided in her mother (in 1989) after studying the issue in law related courses she was taking at a junior college.
S.B.'s sister (C.B.) testified that she also had been raped by defendant. When she was seven years old, defendant was babysitting her and her siblings at their home. Defendant called her into the living room, made her lie on the sofa, and undressed her. He then inserted his penis into her vagina. Because of the pain, she told him to stop. When defendant was finished, he threatened to kill C.B.'s mother, father, and her aunt. A couple of months later, defendant again raped C.B., this time when C.B. was spending the night at her aunt's home.
Defendant testified in his own defense. He denied raping his stepdaughter and two nieces and claimed the accusations were made because his first wife was a vindictive person who wanted to punish him. He also testified that he and the victim's mother separated (for the final time) on November 6, 1986, thus implying that the victim was over twelve years old when the alleged offense occurred.

INTRODUCTION OF OTHER CRIMES EVIDENCE
In the second assignment of error, defendant contests the admission of evidence which showed that defendant had engaged in sexual intercourse with two of his nieces at a time when they were younger. He argues the state did not sufficiently prove that these other acts of rape occurred or that the evidence established a motive, plan, or intent on the part of defendant. He also maintains the connection between the facts of the other crimes and the instant offense was insufficient.
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. State v. McDermitt, 406 So.2d 195, 200 (La.1981). In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, evidence of the commission of other crimes is inadmissible unless the evidence has an independent relevancy besides simply showing a criminal disposition. State v. Lafleur, 398 So.2d 1074, 1080 (La. 1981). La.C.E. art. 404(B)(1) provides the following exceptions to the general rule of inadmissibility of other crimes evidence:

*811 Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
According to a memorandum filed by the State in connection with its request that the other crimes evidence be admitted in this case, the State asserted that the other crimes evidence should be admitted "for the purpose of establishing that this defendant is guilty of the crime charged." The State maintained that identity was going to be a "real issue". At the hearing held on the State's request, the State argued that it intended to introduce the other crimes evidence to show that defendant has "a method of, or a system of violating young children". In the final instructions to the jury, the court stated that the other crimes evidence was being admitted for the limited purpose of showing intent and system.
Although the State asserted the other crimes evidence was admissible to establish defendant's identity as the perpetrator, the facts show identity was not at issue. The victim was familiar with defendant. He was her stepfather and lived in the same home with her. However, in light of defendant's testimony denying that the sexual acts occurred and denying that he committed any innocent acts which might have been misinterpreted by the victim, the real issue was whether or not any sexual acts occurred between defendant and his stepdaughter. Defendant claimed the charges were fabricated because of problems between him and his ex-wife. Thus, the victim's credibility was at issue and any evidence of defendant having a motive or plan to engage in sexual relations with young female relatives would be relevant to establish the crime occurred. See, State v. Hatcher, 372 So.2d 1024, 1035 (La.1979) (on rehearing). See also, State v. Welch, 615 So.2d 300 (La.1993).[1]
As with all other crimes evidence that is independently relevant, other crimes evidence admitted to show motive must satisfy two tests: (1) there must be clear and convincing evidence that the defendant did indeed commit the other crimes, and (2) the probative value of the evidence must outweigh the risk of prejudice, i.e., the risk that the evidence will be used to convict the defendant because he is a person with a criminal disposition. State v. Abercrombie, 375 So.2d 1170, 1175 (La.1979), cert. denied, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980).[2]
In State v. Howard, 520 So.2d 1150 (La. App. 3d Cir.1987), writ denied, 526 So.2d 790 (1988), the defendant was on trial for having committed aggravated rape of his daughter. The appellate court held that evidence of previous sexual assaults against a different daughter at a period of time analogous to the current victim's age (pre-teen years) and under similar circumstances (the defendant was intoxicated and alone with the victim) was properly admitted as demonstrating motive and a plan to systematically engage in nonconsensual sexual relations with his daughters as they matured physically. 520 So.2d at 1154. See also, State v. Long, 590 So.2d 694 (La.App. 3d Cir.1991); State v. Driggers, 554 So.2d 720 (La.App. 2d Cir.1989).
Applying this jurisprudence to the facts of this case, we find no error in the court's decision to admit the evidence. Defendant's earlier rapes of his two nieces were factually similar to the rape of his stepdaughter. The girls were at a similar age (pre-teen years) when the offenses occurred, *812 and the rapes occurred under similar circumstances (when defendant was in charge of the girls, either by babysitting his nieces or by taking care of his stepdaughter). Contrary to defendant's assertion, the State's proof that defendant committed the offenses against his nieces was clear and convincing. Both of the nieces were adults when they testified; and they gave significant details about the sexual acts. The evidence does not support defendant's claim that the charges were fabricated because of an alleged dispute between defendant and his ex-wife. Further, a rational explanation was given by the nieces for their delay in reporting the offenses. The court properly concluded that the probative value of the other crimes evidence (to establish defendant's motive and plan to engage in sexual relations with young female relatives) outweighed any risk of prejudice. Although the delay in reporting these other crimes offenses placed an added burden upon defendant in defending against these acts, defendant knew the witnesses and, thus, was in a better position to respond to the accusations. The evidence concerning defendant's sexual activity with each of the nieces was simple and distinct and did not overlap with evidence of the instant offense.
Accordingly, we find no error in the court's decision. The assignment of error is meritless.

DENIAL OF CHALLENGES FOR CAUSE
In separate assignments of error, defendant contends the trial court erred when it denied defendant's challenges for cause of two prospective jurors. In the third assignment, defendant submits that Gwendolyn Vance should have been excluded from the jury for cause because of her personal experience with this type of offense and because she stated that the proceedings were making her emotional. In the fourth assignment, defendant asserts Betty Adams should have been excluded for cause because she knew the State's attorney and because she stated that she had sensitive feelings toward children. Defendant maintains the two prospective jurors should have been excluded for cause because they would not be able to follow the law.[3]
La.C.Cr.P. art. 797 provides several grounds for which a prospective juror may be challenged for cause, including the following:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and ... the district attorney ... is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court; ...
The trial court is vested with broad discretion in ruling on a challenge for cause, and its ruling will not be disturbed on appeal absent a showing of abuse of discretion. State v. Ruffin, 572 So.2d 232, 235 (La.App. 1st Cir.1990), writ denied, 576 So.2d 26 (1991). A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied. State v. Martin, 558 So.2d 654, 658 (La. App. 1st Cir.), writ denied, 564 So.2d 318 (1990).
After the first jury panel was questioned, defendant challenged Gwendolyn *813 Vance for cause and argued that, because of her personal experience with this type of offense, she would not be able to serve impartially. The apparent basis of defendant's challenge was Vance's response to defense counsel's question concerning whether or not Vance would have any problems listening to the evidence of a sexual offense case. Vance replied, "I don't know. At, at first I was sitting here thinking well, I could be objective but as you're talking I'm getting a knot in my stomach. I have some personal experience myself with this sort of thing and I'm getting emotional here." Vance was not questioned further about the nature of her involvement with this type of case.
Under these circumstances, we find no abuse of discretion in the trial court's denial of defendant's challenge for cause of Vance. Despite indicating she might have problems listening to the evidence, none of Vance's responses implied that her personal experiences would affect her verdict or that she would be unable to render judgment based on the evidence. Furthermore, Vance did not respond to earlier repeated questions by both the prosecutor and defense counsel concerning whether or not any of the jurors had any problems serving as a juror in this case because of the nature of the offense. Accordingly, assignment of error number three is without merit.
After the questioning of the first panel, defendant also challenged Betty Adams for cause on the ground Adams had asserted she would be inclined to favor the child in this case. In response, the State argued that Adams had said only that it would be "personally upsetting or perhaps very hard" for her to listen to the evidence in this case but that she would be able to render a fair and impartial judgment based solely on the evidence. During voir dire, Adams sat silent during repeated questioning by both the State and defendant concerning whether or not any of the jurors would have any difficulty hearing this type of case. However, while defense counsel was concluding her questioning of the panel, Adams interrupted and volunteered, "I have very sensitive feelings toward children and animals and I'm not sure I could do this." Later, she explained that she would be able to listen to the evidence, but she expressed concern that her "feelings are so sensitive when it comes to children." When defense counsel asked Adams whether she would be able to fairly evaluate the testimony or whether she would place more weight on the child's testimony, Adams replied, "It would be hard for me to say at this point." The court then explained to Adams that everyone has certain prejudices and that the court was interested in whether or not Adams could listen to the evidence and render a verdict based upon the evidence presented in court. Adams responded, "I think I could do that, but I would probably feel more for the child, and... my decision might be ... [m]ore for the child on, based on that." Adams was not questioned further concerning this response.[4]
Under these circumstances, we find the trial court erred by denying defendant's challenge for cause of Adams. Although Adams stated that she thought she could render a verdict based upon the evidence, she then said that her feelings were slanted toward children and implied that, in the event of a conflict between the testimony of defendant and a child, she would be more inclined to believe the child. Although bias of this kind can be overcome by rehabilitation, neither the trial court nor the State rehabilitated Adams. In light of her statements and in the absence of rehabilitation, it was not reasonable to conclude that Adams was capable of serving as an impartial juror. See, State v. White, 574 *814 So.2d 561, 563 (La.App. 3d Cir.1991). As a result, the challenge for cause should have been sustained.
However, the erroneous denial of a challenge for cause is not automatically reversible error. To defeat application of the harmless error rule, defendant must establish that he was prejudiced by the court's ruling. State v. Vanderpool, 493 So.2d 574, 575 (La.1986). See, La.C.Cr.P. art. 921.
We find no indication defendant was prejudiced by the court's error in this case. Defendant challenged Adams peremptorily, and Adams did not serve on the jury. At the conclusion of the selection of the jury, defendant had used only nine of the twelve peremptory challenges available to him. There is no indication defendant accepted a questionable juror in hoarding remaining challenges after having challenged Adams.
Accordingly, the error resulting from the court's ruling is harmless; and assignment of error number four is without merit.

LIMITATION ON VOIR DIRE
In the fifth assignment of error, defendant argues the court erred when it ruled that counsel would not be permitted to question the prospective jurors during voir dire on topics already covered by the court. Defendant asserts this ruling deprived him of his right to conduct a full voir dire.
After the selection of jurors from the first panel, the court restricted further voir dire as follows:
I want this please. We're going to change the game in the Voir Dire. I've been meaning to do this for some time, and the time has come.
If I go into something with the jury and question them about it I don't want the same ground covered again. Now, this is as good a time to find out whether we can do that or not.
For me to go into presumption of innocence, blah, blah, blah, the various, all the various rights with a jury and at [sic] extensive and then for you all to proceed to do the same thing in a different way is a waste of time. But that's the way it's going to be.
Defense counsel objected to the court's ruling.
An accused in a criminal case is constitutionally entitled to a full voir dire examination and to the exercise of peremptory challenges. La. Const. art. I, § 17. The court, the state, and the defendant have the right to examine prospective jurors, and the scope of the examination is within the discretion of the court. La. C.Cr.P. art. 786. The purpose of voir dire examination is to determine the qualifications of prospective jurors by testing their competency and impartiality and discovering bases for intelligent exercise of cause and peremptory challenges. State v. Jones, 596 So.2d 1360, 1366 (La.App. 1st Cir.), writ denied, 598 So.2d 373 (1992). Because of the difficulty of the concepts and values which must be understood and applied by each juror in his deliberations, counsel for each side is entitled to an opportunity to assess the personality and comprehension of each prospect as a unique human being before accepting him as a juror or challenging him for cause or peremptorily. Jones, 596 So.2d at 1366. Thus, counsel should be given "wide latitude" during voir dire, within reasonable limits, to explore the attitudes and experiences of the prospective jurors. At the same time, however, the trial judge is given much discretion to limit voir dire as long as the defendant is not deprived of a reasonable opportunity to intelligently exercise his challenges. State v. Lee, 559 So.2d 1310, 1316 (La.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991). A trial court's ruling concerning the scope of voir dire will not be disturbed on appeal in the absence of a clear abuse of discretion. State v. Thomas, 589 So.2d 555, 565 (La.App. 1st Cir.1991).
After considering the entirety of the voir dire in light of the above jurisprudence, we find no abuse of discretion by the trial court. The only limitation placed by the court was on counsels' use of repetitive questions. For the reasons which follow, we find that such a restriction under *815 the circumstances of this case was a proper use of the court's discretion. See, State v. Duplessis, 457 So.2d 604, 606 (La.1984). Neither before the trial court nor before this Court has defendant detailed any area of inquiry he did not pursue as a result of the court's ruling. The only examples of potential prejudice cited by defendant on appeal occurred during the selection of the first jury panel at a time before the court issued the ruling at issue in this assignment. Although defendant did not question the second panel about the presumption of innocence and burden of proof (topics already covered by the judge), defendant's questioning of the second and third panels otherwise was similar to his questioning of the first panel. Additionally, when defendant repeated these topics (presumption of innocence and burden of proof) with the third panel (after the topics already had been discussed by the judge), the court did not interrupt the questioning or restrict defense counsel in any manner.
For these reasons, the assignment of error is without merit.

IMPROPER ARGUMENT CONCERNING DEFENDANT'S FAILURE TO PRODUCE CERTAIN WITNESSES
In the ninth assignment of error, defendant complains about certain statements made by the prosecutor during closing arguments. Defendant asserts these statements implied defendant had an obligation to present a defense and, thus, were improper.
During closing arguments, the state asked the jury to consider the motives of the witnesses in evaluating the credibility of defendant's testimony. The State referred the jury to defendant's testimony that he first separated from his wife in 1981 when he went to live temporarily with another woman, Sandra Carter. The State then noted that Carter had not testified. The State also referred the jury to defendant's testimony that, during the time when his wife and her children would have been living with his sister-in-law's family, defendant claimed he lived with a friend, Michael Cahee. In reference to Cahee, the State also noted that Cahee had not testified.
For the following reasons, we find no merit in this assignment of error. Contrary to defendant's claim on appeal that he objected to this argument as being outside the scope of the closing argument, we find no indication of any objection. Thus, defendant is barred procedurally from seeking review of this assignment. See, La.C.Cr.P. art. 841.
In any event, even if we were to review the substantive merits of defendant's claim, we would find no error in the State's argument. During the cross-examination of defendant, the State asked defendant about his living arrangements with Carter and Cahee. Without any objection by defendant, the State asked defendant if Carter and Cahee would be in a position to corroborate this portion of defendant's testimony were they to testify. Defendant responded that they would. Thus, the State's argument at issue in this assignment was confined "to evidence admitted, to the lack of evidence, [or] to conclusions of fact that the state or defendant may draw therefrom." See, La.C.Cr.P. art. 774.
The assignment of error is without merit.

IMPROPER ARGUMENT CONCERNING THE EFFECTS OF A NOT GUILTY VERDICT
In the tenth assignment of error, defendant argues that the State's request during closing arguments that the jury send a message with their verdict was improper.
During the State's rebuttal argument, the assistant district attorney told the jury that:
[L]adies and gentlemen, this case is also about sending a message, and you as a jury, have to determine what message you are going to send to the people involved. Are you going to send the message to [the victim] that it's not a good idea to come forward and tell people that you've been raped? It's not a good idea to say anything. It's a good idea to keep your mouth shut and don't say a word, because there's nothing anybody's *816 going to do about it. And are you going to send the message to Mr. Tyler, [which] the testimony has shown, has raped three young women, that it's okay to do it and it's okay to threaten those people because the threats worked. Because that's the issue. And you have to decide if you're going to send those two messages after fairly considering the evidence. Because I submit to you that's what a not guilty verdict will accomplish.
The most elementary rule governing the limits of argument is that it must be confined to the record evidence and the inferences which can reasonably and fairly be drawn therefrom. State v. Smith, 554 So.2d 676, 681 (La.1989). See, La.C.Cr.P. art. 774. In any event, the argument must not appeal to prejudice. State v. Prestridge, 399 So.2d 564, 580 (La.1981). It is improper for a prosecutor to turn the state's argument to the jury into a plebiscite on crime or to refer to the consequences to society of the jury's verdict. Smith, 554 So.2d at 684. However, before a verdict will be overturned on the basis of improper argument, this Court must find that the remarks complained of contributed to the verdict or influenced the jury. See, Smith, 554 So.2d at 685-86. See also, State v. Crocker, 551 So.2d 707, 714 (La.App. 1st Cir.1989).
The prosecutor's statement that the jury verdict would send a message was improper and a possible appeal to the jurors' prejudice. However, for the following reasons we find no merit in the assignment of error. Contrary to defendant's claim on appeal, defendant did not object to the prosecutor's statements, nor did he move for a mistrial or request an admonition. Thus, he is barred procedurally from advancing this claim. Furthermore, the jury's verdict was amply supported by the evidence; and there is little likelihood that the prosecutor's remarks contributed to the verdict. See, State v. Martin, 550 So.2d 568, 572 (1989).
The assignment of error is meritless.

SUFFICIENCY OF THE EVIDENCE
In the eleventh assignment of error, defendant claims the court erred when it denied his motions for new trial and for post verdict judgment of acquittal. Adopting the arguments made in all other assignments of error, defendant asserts the cumulative error was such that defendant should be granted a new trial. We have carefully reviewed each assignment of error and have found no reversible error. Furthermore, the combined effect of the incidences complained of did not deprive defendant of the right to a fair trial. There is no cumulative prejudicial impact nor is there a denial of due process. See, State v. Copeland, 530 So.2d 526, 544-45 (La.1988); State v. Graham, 422 So.2d 123, 137 (La.1982).
In connection with the denial of the motion for post verdict judgment of acquittal, defendant argues the evidence supporting his conviction is insufficient. Defendant does not specifically contest the sufficiency of the state's evidence as to any particular element of the offense. Instead, he maintains he was convicted on the basis of highly prejudicial and inflammatory other crimes evidence.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also, La.C.Cr.P. art. 821(B).
The portion of the aggravated rape statute applicable in this case is as follows:
A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
* * * * * *

*817 (4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.

* * * * * *
La.R.S. 14:42(A). Rape is defined as "the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." La. R.S. 14:41(A).
The victim testified that, about a week before her mother and father separated, defendant took her into one of the bedrooms. He undressed her and inserted his penis into her vagina. Although the victim could not recall the specific date of the offense, her mother testified that the separation occurred a few days before Christmas in 1985. Considering the victim's date of birth (April 9, 1974), she would have been eleven years old on the date of the offense. The testimony of two of the victim's female cousins concerning similar treatment of them by defendant established that defendant had a pattern of raping female relatives during their pre-teen years. In connection with our review of assignment of error number two, we have determined the court properly admitted this other crimes evidence.
Although defendant testified in his own defense and denied the victim's allegations, the jury was free to accept or reject, in whole or in part, the testimony of any witness. See, State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). The jury's decision in this case to reject defendant's testimony was rational. The entirety of the evidence, when viewed in the light most favorable to the State, establishes defendant's guilt beyond a reasonable doubt. The assignment of error is without merit.

PATENT ERROR
In reviewing the record for patent error, we have found error in the sentence. The trial court did not give defendant credit for time served. See, La.C.Cr.P. art. 880. Accordingly, we amend the life sentence to reflect that defendant is to be given credit for any time served prior to execution of his sentence. See, State v. King, 604 So.2d 661, 670 (La.App. 1st Cir.1992). Resentencing is not required. However, we remand the case and order the district court to amend the commitment and the minute entry of the sentencing to reflect that defendant is to be given credit for time served.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED; REMANDED WITH ORDER.
NOTES
[1] Docket No. 92-K-1866; rendered February 22, 1993.
[2] In addition to these requirements, the State also is required to comply with the procedural safeguards established in State v. Prieur, 277 So.2d 126 (La.1973). See, La.C.E. art. 1103. In connection with this assignment of error, defendant does not contest the State's compliance with these safeguards.
[3] Defendant admits he did not exhaust all his peremptory challenges. However, a defendant is not required to exhaust his peremptory challenges in order to preserve for appeal the court's denial of a challenge for cause. See, La.C.Cr.P. art. 800 (as amended by 1983 La. Acts, No. 181, § 1); State v. Young, 569 So.2d 570, 584-85 n. 19 (La.App. 1st Cir.1990), writ denied, 575 So.2d 386 (1991).
[4] On appeal, defendant also details Adams' relationship with the prosecuting attorney as being an additional reason why the challenge for cause should have been granted. Adams stated that she was acquainted with the assistant district attorney's wife and family. However, the mere fact that Adams was acquainted with the State's attorney is not a sufficient reason to grant a challenge for cause. Only if that relationship were such that it would influence the juror in her decision should the challenge be granted on that ground. See, State v. Lee, 559 So.2d 1310, 1317 (La.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991).