626 So.2d 780 (1993)
STATE of Louisiana, Appellee,
v.
Leroy CUTWRIGHT, III, Appellant.
No. 25,258-KA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1993.
*782 Allan R. Harris, Indigent Defender Bd., for appellant.
Richard Ieyoub, Atty. Gen., Paul Carmouche, Dist. Atty., Ronald R. Inderbitzen, Asst. Dist. Atty., for appellee.
Before VICTORY, BROWN and WILLIAMS, JJ.
BROWN, Judge.
A jury's verdict of guilty of second degree murder resulted in a mandatory life imprisonment sentence for defendant, Leroy Cutwright, III. Defendant principally argues in brief that "[t]he State knew the shooting in this case was unintentional and accidental, so it tried to get around this problem by claiming that it occurred during a robbery, either armed or simple. But the evidence on the robbery claim is ... so weak, in fact, that... any rational trier of fact must come to the conclusion that the State failed to prove beyond a reasonable doubt every essential element of second degree murder." We find, however, that the evidence was such that a rational juror could have found defendant guilty of second degree murder.

FACTS
This killing had its origin in the brief association between defendant, the victim and crack cocaine. The defense presented no evidence at trial. The prosecution's evidence consisted of defendant's statement and the analysis of physical evidence. According to defendant's statement, he and the victim smoked crack cocaine early in the evening of February 1, 1992. Sometime later, the victim, Marshall Walker, obtained possession of additional rocks of cocaine (crack). In the early morning hours of February 2, 1992, defendant and the victim were in the kitchen of a house at 2415½ Laurel Street in Shreveport. The victim refused to share his newly acquired cocaine with defendant, stating, "Let me make some money." Defendant then offered to exchange an unloaded .32 caliber revolver for some of the rocks. The victim refused to trade. At that point, defendant went into an adjacent room, loaded the revolver and returned to the kitchen where he grabbed five rocks of cocaine from the table. Defendant claims the victim grabbed him. In the ensuing struggle the victim was shot in the lower abdomen.
Defendant fled the Laurel Street house leaving the victim mortally wounded. Defendant then smoked the five rocks of cocaine he took from the table. After smoking the cocaine, defendant saw or heard Sunrose Rutledge, Jr., a dispatcher with the Caddo Sheriff's *783 Department, getting into his automobile to go to work. Defendant approached Rutledge and informed him that he had shot somebody the night before. Rutledge then phoned the Shreveport Police Department.
Defendant gave a recorded statement setting forth the above stated facts. This statement was played to the jury. The .32 caliber revolver was found after defendant showed the police where it had been hidden. The coroner testified that the victim died from a single gunshot wound to the abdomen and had cocaine in his system. The coroner recovered the fatal bullet from the victim's body which the crime laboratory determined was fired from defendant's revolver.

REVIEW STANDARD
Sufficiency of the evidence review is whether, after viewing the evidence in the manner most favorable to the prosecution, it supports a rational judgment of guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); LSA-C.Cr.P. Art 821; State v. Meyers, 620 So.2d 1160 (La.1993). This reasonable doubt standard of appellate review applies to all evidence, whether direct or circumstantial. State v. Wright, 445 So.2d 1198, 1201 (La.1984).
The standard of review for sufficiency of evidence, however, should not be confused with the corroboration rule concerning the corpus delicti. In any criminal prosecution the corpus delicti must be established independently of a defendant's extrajudicial statement, confession or admission. State v. Celestine, 452 So.2d 676 (La.1984). The meaning of corpus delicti has been the subject of some confusion. In the context of this case, it means that a specific kind of injury (death) occurred as a result of someone's criminality. 7 Wigmore, Evidence § 2072 (Chadbourn rev. 1981). The corroboration rule requires only that there be some evidence, besides the confession, that a criminal act was committed by someone. This rule insures that the crime was real and not imaginary. See State v. Swafford, 588 So.2d 1276, 1281 (La.App.2d Cir.1991), where defendant's statement that she sold marijuana without any other evidence, did not prove the existence of a crime. However, the test does not require proof as clear and convincing of the corpus delicti as that necessary to establish guilt. A reasonable inference that a crime occurred is sufficient, even in the presence of a plausible noncriminal explanation of the event. See State v. Celestine, supra; State v. Howard, 505 So.2d 228 (La.App. 3d Cir. 1987); Wigmore, supra.
In State v. Ford, 454 So.2d 1226, 1228 (La.App.2d Cir.1984), we stated:
By this assignment the defendant contends that his conviction was based only on his confession without any other evidence connecting him to the offense. The defendant argues that in order for a voluntary confession to be admissible and to support a conviction the state should not only have to prove that a crime has been committed but should also have to prove an independent link between the defendant and the crime. Defendant cites State v. Reed, 420 So.2d 950 (La.1982) in which the court, after holding that when the details of a proven corpus delicti are corroborated by a voluntary confession, the confession is admissible, noted that, in addition, tire marks from the defendant's car also linked him to the crime. The parenthetical reference to the additional link between the defendant and the crime in the Reed case did not establish such an additional link as a standard or requirement for the admissibility of a voluntary confession or for judging the sufficiency of the evidence to support a conviction. There is no such requirement.
In this case, proof of the burglary and taking of the truck, together with the defendant's voluntary confession, constituted sufficient evidence of his guilt of the offenses for which he was convicted. [burglary and unauthorized use of a movable].
The rule concerning proof of the corpus delicti is based on a hesitancy to accept without corroboration a confession to a crime that may never have been committed. Thus, where as in the instant case there is independent proof of a shooting death, this fear of a non-existent crime vanishes and the rule has served its purpose. Once proof independent of the confession infers the fact *784 of death by violent means, the confession alone can supply the proof linking the accused to the crime. Additionally, the confession can prove the elements essential to determining the degree of the crime, such as, intent or the underlying felony in a felony murder prosecution. See State v. Celestine, supra; State v. Romero, 369 So.2d 1342 (La. 1979); State v. Ford, supra. The medical confirmation that the victim died from a gunshot wound adequately established the corpus delicti in the instant case. This reasonable inference of the existence of a crime was further bolstered by the absence of a weapon at the scene, which would be contrary to a self-inflicted or accidental shooting.

SUFFICIENCY OF EVIDENCE
The Louisiana Legislature has defined second degree murder as the killing of a human being when the offender (1) has a specific intent to kill or to inflict great bodily harm; or (2) is engaged in the perpetration or attempted perpetration of, inter alia, armed robbery, first degree robbery or simple robbery, even though he has no intent to kill or to inflict great bodily harm. LSA-R.S 14:30.1(2). Armed robbery has been defined as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64; State v. Perry, 612 So.2d 986, 988 (La.App. 2d Cir.1993); State v. Brown, 618 So.2d 629, 636 (La.App. 3d Cir.1993). Except for the use of a dangerous weapon, first degree and simple robbery have the same elements as armed robbery. The different grades of robbery are distinguishable by the amount of risk posed to the victim.
In any grade of robbery, the danger to the victim is the same whether the force or intimidation is employed against the victim during, immediately before or immediately after the actual taking. State v. Meyers, supra. Moreover, where the final step in a series of events constituting the robbery, or even a defendant's escape, is perfected by use of a dangerous weapon, that element of armed robbery has been established. State v. Powell, 621 So.2d 111, 113 (La.App.2d Cir.1993).
It is the felonious taking more than the perfect title of the alleged owner that forms the essence of the jury question in a robbery case. State v. Perry, 612 So.2d at 988. It is not essential that the property taken was owned by the victim; it is only necessary that the accused was not the owner and that the victim had a greater right to possession at the time of the taking than did the accused. State v. Laird, 548 So.2d 373, 376 (La.App. 3d Cir.1989), writ denied, 556 So.2d 54 (La.1990) (the property taken from the victim was cocaine). It is the victim's greater possessory interest in the property stolen that is called for in proving the crime of robbery. State v. Perry, supra.
Officer Fields testified that he responded to the shooting call and arrived at the scene at about 4 a.m. The victim was dead. Sunrose Rutledge, the Caddo Sheriff's Department dispatcher, testified to being approached by defendant at about 6 a.m. and thereafter calling the Shreveport Police Department.
Officer Vishnefski testified that as a result of Rutledge's call he picked up defendant. He advised defendant of his Miranda rights. After again advising him of his Miranda rights, Detectives Hayes and Crow took a tape-recorded statement from defendant. Following this statement, defendant led the officers to where he had hidden his weapon, which was retrieved by Sgt. Gray. Crow identified the victim as Marshall Walker and described drug paraphernalia found on the kitchen table at the homicide scene.
Detective Hayes testified that though he and Crow did not recover any drugs from the scene, they did find paraphernalia. The state played the tape recording of defendant's statement to the jurors.
Sgt. Gray, a crime scene technician, testified that he found white powdery residue, a single-edged razor blade and a picture frame with glass on a table at the scene. A field test on the residue was negative for cocaine and Gray concluded that it was probably a cutting agent. Gray recovered the weapon *785 which contained one spent and five live rounds.
The coroner, Dr. McCormick, testified that the victim suffered a single gun shot wound in his abdomen below the belt. A urine screen showed the presence of cocaine and a cocaine metabolite which was consistent with the use of cocaine at the approximate time of death.
Richard Beighley, a criminologist at the North Louisiana Crime Lab, testified that the bullet taken from the victim's body by Dr. McCormick had been fired from the gun recovered by Sgt. Gray. The victim's jacket contained soot indicating that the shot was fired while the gun was in contact with or very close to the victim.
For a sufficiency of evidence review, defendant's confession added the necessary elements of the underlying felony to support his second degree murder conviction. The trustworthiness of defendant's confession was corroborated by the totality of the circumstances.
Drug paraphernalia at the scene and the toxicology report, evidencing the use of cocaine by the victim near the time of his death, lends support to defendant's statement regarding the presence of cocaine. The contact wound to the lower abdomen and the fact that the weapon had one spent round is indicative of a struggle. The fact that there was a struggle would tend to corroborate the element that the property was the victim's and was under his control. The absence of cocaine at the shooting scene along with the existence of a struggle supports defendant's statement that he took five rocks of cocaine from the victim's immediate control. Having earlier shared cocaine with the victim would not have vested defendant with any possessory rights to the newly acquired crack. A rational juror could have found guilt beyond a reasonable doubt.

HEARSAY
On cross-exam, Detective Crow said he had talked to four or five people outside the house where the victim was killed. Outside the jury's hearing, Crow then testified that these people said illegal drugs had been used at the Laurel Street address on the night of the shooting and on previous occasions. From these interviews, Crow concluded that this address could be labeled a "crack house." The prosecution's objection was sustained and the trial court did not allow Crow to express his opinion when the jury returned. Defense counsel sought this testimony to support his theory that the cocaine belonged to everyone present.
L.C.E. Art. 701 provides:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
The trial court has great discretion in rulings concerning the examination of witnesses. State v. Murray, 375 So.2d 80, 84 (La.1979). In order to reverse a conviction on the claim of improperly excluded evidence, a reviewing court must find that the trial court was wrong in excluding the evidence and that defendant was prejudiced by the error. State v. Walker, 558 So.2d 1346, 1348 (La.App. 4th Cir.1990). To determine whether a defendant was prejudiced, a reviewing court must decide if there is a reasonable probability that the exclusion of the evidence in question might have contributed to the conviction or if the error was harmless beyond a reasonable doubt. State v. Walker, 558 So.2d at 1348.
After review of this record, we cannot say that the trial court was wrong. Crow's opinion was based on hearsay and was not related to the purpose of his testimony; however, even if the trial court erred in excluding this testimony, the error clearly did not contribute to defendant's conviction and was therefore harmless. The facts brought out at trial fully established that crack cocaine was being used at the house. Having Crow give an opinion that this was a "crack house" would have been cumulative and inconsequential. The prosecution's position was that cocaine was being used and *786 sold at the house. Thus, there is no indication that the defendant was prejudiced by the exclusion of Crow's opinion. See State v. Gibson, 391 So.2d 421 (La.1980).

JUROR CHALLENGES
Defendant's final assignment of error claims that the trial court erred in failing to grant the defendant's challenge for cause against Queen C. Walker. Defense counsel then excused Ms. Walker by exercising a peremptory challenge. Thereafter, all twelve of defendant's peremptory challenges were used.
In allowing challenges for cause, the trial judge is vested with broad discretion. State v. Wiley, 614 So.2d 862, 866 (La.App. 2d Cir.1993). Absent a showing of abuse of discretion, the trial court's ruling will not be disturbed on appeal. State v. Johnson, 595 So.2d 789, 792 (La.App. 2d Cir.1992); State v. Otis, 586 So.2d 595, 600 (La.App. 2d Cir.1991); State v. Tyler, 619 So.2d 807, 812 (La.App. 1st Cir.1993). A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to the law may be reasonably implied. State v. Tyler, supra.
Queen C. Walker was questioned about the death of her nephew three years earlier and the acquittal of his alleged killer. Ms. Walker said that this death and subsequent acquittal would not cause her to be prejudiced or partial in the case at hand. Ms. Walker was not involved in her nephew's case but stated that her sister commented that "justice had been served. She [Ms. Walker's sister] had told her son [Ms. Walker's nephew] what would happen if he would continue [exactly what he was doing is not clear]."
Ms. Walker was also questioned about her knowledge of the shooting at issue and the fact that she and her ex-husband owned a rental house on Laurel Street in the general vicinity of the shooting. She stated that she had heard that there had been a shooting on Laurel Street but she knew no specific facts. She stated that she had no knowledge that would affect her service as a juror.
The trial court concluded from Ms. Walker's responses that she could render an impartial verdict. We find no error nor abuse of discretion in this conclusion.
We have reviewed the record for errors patent and found none. LSA-C.Cr.P. Art. 920(2).
AFFIRMED.