649 So.2d 726 (1994)
STATE, Plaintiff-Appellee,
v.
Alex BROUSSARD, Defendant-Appellant.
No. CR94-40.
Court of Appeal of Louisiana, Third Circuit.
November 23, 1994.
*727 Ronald E. Dauterive, Lafayette, for State.
G. Paul Marx, Lafayette, for Alex Broussard.
Before DOUCET, SAUNDERS and WOODARD, JJ.
SAUNDERS, Judge.
The Lafayette Parish Grand Jury charged Alex Broussard, defendant-appellant, with oral sexual battery, a violation of Louisiana Revised Statutes 14:43.3. Prior to trial the state filed a Prieur Motion, noticing its intent to introduce other crimes evidence. After a hearing on the matter, the trial court granted the state's request. Following a trial, the jury returned the responsive verdict of attempted oral sexual battery, a violation of Louisiana Revised Statutes 14:43.3 and 14:27.
The trial court sentenced the defendant-appellant to five (5) years at hard labor, of which all but eighteen (18) months were suspended. The trial court ordered that the defendant be placed on active and supervised probation for five years upon completion of the eighteen (18) months of incarceration. The trial court denied defendant's oral motion to reconsider his sentence. The defendant now appeals his conviction and sentence.

FACTS
On the afternoon of February 12, 1989, the defendant-appellant, Alex Broussard (hereafter BROUSSARD), drove by the thirteen year old victim, TL, as she walked along Fieldspan Road. BROUSSARD stopped his car and offered TL a ride. TL accepted the offer and entered the defendant's car.
*728 During the ride, BROUSSARD told TL that he needed someone to clean his home. TL offered to clean his home and BROUSSARD agreed to compensate her for the work.
BROUSSARD and TL entered the defendant's trailer located on Fieldspan Road. No one else was in the home at the time. BROUSSARD and TL began to wash dishes. While TL washed dishes, BROUSSARD began to touch and fondle TL and compliment her looks. TL asked BROUSSARD to stop, but he continued to touch and to rub on TL.
Later, BROUSSARD called out to TL from his bedroom that he wanted to show her something. After TL entered the bedroom, BROUSSARD played pornographic videotapes. BROUSSARD commented on the videotape and asked TL to have sex with him. When TL refused the request, BROUSSARD forced himself on her. During the course of the incident, BROUSSARD placed his finger and tongue in the victim's vagina, and then placed his penis in TL's mouth. TL estimated that the sexual assault lasted three (3) hours.
After the incident, BROUSSARD locked the victim in his bedroom and left the trailer. He returned to the trailer later with liquor he acquired from the neighboring bar that he managed. BROUSSARD made TL drink alcohol and also smoke marijuana. BROUSSARD continued to feel TL's body and again requested that she have sex with him in exchange for money. TL stated that she wanted to go home, but the defendant pressed her to stay longer.
BROUSSARD eventually allowed TL to leave. Before he released her, BROUSSARD told her to keep the incident a secret. He paid her approximately $50.00 and gave her a ride to a nearby grocery store. Before TL left the grocery store, she purchased two bags of groceries as a belated birthday gift for her mother. When TL arrived home, her mother questions her about the purchases. TL explained to her mother that she earned the money earlier in the day cleaning a lady's home. TL's mother doubted the truthfulness of the story and ordered TL to take her to the lady whose home she allegedly cleaned. TL, accompanied by her mother and aunt, directed them to BROUSSARD'S home. They entered the defendant's home and noted that except for the dishes, the home was untidy. They asked him about TL's story. BROUSSARD explained that he hired TL to clean his home and paid her. He stated that he gave TL an extra $20.00, when TL said that her mother recently celebrated a birthday. BROUSSARD also gave her a western necktie and a business card with his name and phone number written on the reverse side.
When they returned home, TL's mother detected an odor of alcohol on TL's breath. Still doubting TL'S and BROUSSARD's story about what occurred, TL's mother questioned her again about the time that she spent at BROUSSARD'S home. After pressing her for answers, TL broke down, cried, and explained that BROUSSARD sexually assaulted her. TL's aunt physically inspected TL and then called the Lafayette Parish Sheriff's Department.
Law enforcement officers subsequently arrested and questioned BROUSSARD concerning the alleged incident with TL. In his statement to the investigating officer, he admitted that he picked up TL, brought her home, and paid her to clean his home. He denied, however, sexually assaulting her, playing pornographic video tapes, or forcing her to drink alcohol and smoke marijuana.

ERRORS PATENT
Louisiana Code of Criminal Procedure article 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows that the court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive and this is not grounds to reverse the sentence or remand the case for resentencing. La.Code Crim.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under Louisiana Code of Criminal Procedure articles 914 or 922, so prescription is not yet running. Apparently, the purpose of the notice of Article 930.8(C) is to inform defendant of the prescriptive period in advance. Consequently, *729 we order the trial court to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. See, State v. Fontenot, 616 So.2d 1353 (La.App. 3d Cir.), writ denied, 623 So.2d 1334 (La.1993).
Louisiana Code of Criminal Procedure art. 880 provides that when imposing sentence the trial court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record indicates that the trial court failed to do so. Thus, we order the district court to amend the sentence to reflect that the defendant is given credit for time served prior to the execution the sentence. See, La.Code Crim.P. art. 882(A). Although resentencing is not required; re order this case remanded to the trial court and order it to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served. State v. Jones, 607 So.2d 828 (La.App. 1st Cir.1992), writ denied, 612 So.2d 79 (1993).

Assignment of Error No. 1
The defendant-appellant contends that the trial court erred in allowing the state to use in its case in chief evidence of other crimes or bad acts of the defendant concerning: (1) two earlier episodes in which BROUSSARD sexually assaulted two other adolescent victims; and, (2) BROUSSARD'S payment to Lisha Prejean to lie on his behalf before the Lafayette Parish Grand Jury.
This court must first review the other crimes and bad acts evidence which the state offered in its case in chief and determine whether it was admissible pursuant to Louisiana Code of Evidence article 404(B) and current Louisiana jurisprudence. If we find that the evidence was not admissible, then this court must determine whether the erroneous admission of the evidence should result in a reversal of the defendant's conviction. "In determining whether erroneous admission of evidence requires reversal of a defendant's conviction, the proper standard is whether there is a reasonable possibility that the evidence might have contributed to the verdict, and whether the reviewing court is prepared to state beyond a reasonable doubt that it did not." State v. Romero, 574 So.2d 330, 335 (La.1990) (citing Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Walters, 523 So.2d 811 (La.1988); State v. Green, 493 So.2d 1178 (La.1986); State v. Gibson, 391 So.2d 421 (La.1980)).
The state has the burden of proving beyond a reasonable doubt an accused's guilt of the specific crime charged. La. Const. of 1974 art. 1, § 16. "Proof of present guilt may not properly be made by proof of general bad character or of prior criminal record or of other unrelated criminal activity." State v. Slayton, 338 So.2d 694, 695 (La.1976) (citing State v. Prieur, 277 So.2d 126 (La.1973)). Consequently, evidence of prior bad acts, crimes, and offenses committed by the defendant are generally inadmissible except when they form part of the res gestae of the offense for which the defendant is charged or are convictions admissible for impeachment purposes. State v. Broussard, 527 So.2d 1216 (La.App. 3d Cir.1988).
Louisiana Code of Evidence article 404(B)(1) provides an illustrative list of exceptions when evidence of the defendant's other crimes, bad acts or wrongs are admissible:
1) Except as provided in Article 412[[1]], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be *730 admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Additional exceptions established by Louisiana courts include other crimes evidence introduced to show motive, State v. Lafleur, 398 So.2d 1074 (La.1981)[2], State v. Dowdy, 217 La. 773, 47 So.2d 496 (1950)[3], and prior sex crimes committed against the same prosecutrix admitted to show a lustful disposition toward that victim, State v. Alciese, 403 So.2d 665 (La.1981).
More pertinent to the issues presented in this case, Louisiana courts have admitted prior sex crimes committed by the defendant under similar or analogous circumstances against a victim(s) other than the prosecutrix when the motive or plan of the defendant was at issue; State v. Cupit, 189 La. 509, 179 So. 837 (1938); State v. Tyler, 619 So.2d 807 (La.App. 1st Cir.), writ denied, 624 So.2d 1225 (La.1993)[4]; State v. DeRoche, 629 So.2d 1267 (La.App. 5th Cir.1993); State v. Long, 590 So.2d 694 (La.App. 3d Cir.1991); State v. Driggers, 554 So.2d 720 (La.App. 2d Cir.1989); State v. Howard, 520 So.2d 1150 (La.App. 3d Cir.1987), writ denied, 526 So.2d 790 (La.1988). Additionally, Louisiana courts have admitted evidence of criminal acts of the accused constituting admissions of guilt by conduct wherein the defendant acts to obstruct justice or avoid punishment for the current crime with which he is charged: State v. Clark, 492 So.2d 862 (La.1986)[5]; State v. Burnette and Granger, 353 So.2d 989 (La.1978); State v. Davies, 350 So.2d 586 (La.1977)[6]; State v. Graves, 301 So.2d 864 (La.1974)[7]. Cf. State v. Lee, 381 So.2d 792 (La.1980).
Whether by a statutorily or jurisprudentially created exception, the purpose for which the other crimes evidence is being offered must be a material issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible. See, State v. Jackson, 625 *731 So.2d 146 (La.1993); La.Code Evid. arts. 401 and 402. In addition, "[e]ven if otherwise admissible, if the prejudicial effect outweighs the probative value of evidence of other offenses, such evidence should be excluded." State v. Slayton, 338 So.2d 694, 696 (La.1976) (citing State v. Moore, 278 So.2d 781 (La. 1973)); see, La.Code Evid. art. 403.
Finally, before a defendant's other crimes or bad acts may be admitted by the state in its case in chief, Louisiana statutory law and jurisprudence requires the state to do the following: 1) prove by clear and convincing evidence that the other crimes or bad acts occurred; 2) show that the evidence is neither repetitive nor cumulative, and is not being introduced to show that the defendant is of bad character; and, 3) provide written notice of its intent to use other crimes or bad acts, describe these acts in sufficient detail, and state the exception for which it is being offered. La.Code Evid. art. 1103.[8]
In this case, the defendant-appellant does not contend that the state failed to give prior written notice, but that the state failed to provide a legitimate purpose for introduction of the other crimes evidence that is an exception to the general rule against the admissibility of other crimes evidence. We disagree with defendant-appellant's contention that he was not apprised of the purpose and exception by which the evidence was being offered. While the testimony of the Prieur hearing conducted prior to trial is not part of this record, the record including the state's 404(B) motion and the arguments made by the state and BROUSSARD during trial concerning the admissibility of the other crimes evidence clearly establishes the state's purpose for offering the evidence of the earlier sexual assaults: BROUSSARD'S motive or plan. As to the other crimes evidence concerning BROUSSARD'S payment to Lisha Prejean to lie on his behalf before the grand jury, BROUSSARD concedes that the state had a legitimate purpose in offering it, but that the trial court failed to give an appropriate limiting instruction to its use and application. We disagree. The record clearly establishes that the trial court in accordance with Prieur gave the appropriate instruction concerning the limited use of other crimes evidence.
Next, we address whether the other crimes evidence concerning two earlier episodes of sexual assault committed by the defendant against two other adolescent victims was an exception to the general rule against the introduction of a defendant's other crimes or bad acts.
Louisiana jurisprudence and statutory law unquestionably supports the introduction of evidence concerning motive or plan by the state in its case in chief when the issue is material and has independent relevance. In this case, the defendant offers an innocent motive for picking up TL and bringing her home. The defense argues that BROUSSARD was only being a good Samaritan in picking up TL to get her out of the rain, and furthermore, that he only brought her home to clean his house. Additionally, as part of his defense, BROUSSARD suggests that TL and presumably her family set him up to extort money from him. BROUSSARD's innocent explanation for picking up TL is clearly at issue and has independent relevance.
The similarity in the timing of the acts, the type of sexual assault, the location of the assaults, and the analogous and peculiar manner in which BROUSSARD used his age and adult influence over his adolescent victims to get them to inebriate themselves by drinking and additionally in this case smoking marijuana, provides the jury with probative and relevant circumstantial evidence which demonstrate motive and plan: to take advantage of adolescent females in one-on-one situations by suppressing their natural inhibitions and defenses with alcohol, and in this case also marijuana, and satisfy his pedophilic desires. It is circumstantial evidence *732 from which the jury can reasonably, intelligently, and logically infer a motive and a plan. Without this testimony, the jury would have had little corroboration of the victim's assertions which the defendant clearly refutes and places in dispute.
As concerns the admission by the trial court of other crimes[9] evidence concerning BROUSSARD'S payment to Lisha Prejean to lie on his behalf before the grand jury of Lafayette Parish, we find that the Louisiana jurisprudence and statutory law also unquestionably supports its introduction as evidence of admissions of guilt by conduct.
In this case, the record reveals that the state offered clear and convincing evidence that BROUSSARD bribed Ms. Prejean to lie before the grand jury and offer testimony that would lend support to his innocent explanation for picking up TL. Her fabricated testimony was designed by BROUSSARD to offer corroborative evidence to support his contention that the only thing that occurred at his home on the day of the alleged crime was that TL cleaned his house. In addition, the testimony would have provided BROUSSARD with an alibi in that Prejean's fabricated testimony would have placed BROUSSARD somewhere else at the time of the alleged sexual assault. Clearly, this other crimes evidence falls squarely within the class of evidence that Louisiana courts consider as admissions of guilt by conduct.
While generally all incriminating evidence, particularly other crimes or bad acts of the defendant, is prejudicial, it will not be excluded for that reason alone. In this case, the state provided clear and convincing evidence of the earlier episodes of sexual assault and the bribery of a witness. With clear instructions from the trial judge concerning the limited purpose for the introduction other crimes evidence, the detail with which the victims of the earlier crimes testified and the equally clear evidence concerning the bribe, we find that the jury should have had no problem separating and distinguishing between the earlier offenses and the present offense. Evidence that is relevant, material, and at issue, should not be excluded when its probative values outweighs its prejudicial effect. Consequently, we conclude that BROUSSARD was not unfairly prejudiced by the introduction of the other crimes evidence. See, e.g., State v. Driggers, supra. In sum, the most important threat to the defendant in the introduction of other crimes evidence is that the defendant will be found guilty merely because he is a man of bad character, or because he has committed the crime before. We find no evidence of that in this case.

Assignment of Error No. 2
In his second assignment of error, the defendant-appellant contends that the trial court erred in imposing an excessive sentence and denying his request for reconsideration under Louisiana. Code of Criminal Procedure article 881.1. The defendant argues that the consideration of uncharged conduct by the trial court at sentencing was *733 prejudicial, creating a criminal history that did not exist.
Louisiana Revised Statutes 14:27(D)(3) provides the pertinent sentencing provision for the attempted crime as follows:
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
Louisiana Revised Statutes 14:43.3(C) provides the penalty for the substantive crime as follows:
C. Whoever commits the crime of oral sexual battery shall be punished by imprisonment, with or without hard labor, for not more than fifteen years.
Reading these provisions together provides the appropriate statutory sentencing range of not more than seven and one-half (7½) years with or without hard labor. The defendant's presentence investigation report indicates that the appropriate felony sentencing guideline grid cell is F-5. This grid cell falls in the intermediate sanction zone and suggests a minimum sentence of eighteen months (1½ years) and a maximum sentence of thirty months (2½ years).
In State v. Smith, No. 93-0402, p. 3 (7/5/94) 639 So.2d 237, 240, the court held:
"(1) while a trial judge must consider the Guidelines, he has complete discretion to reject the Guidelines and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of which a defendant has been convicted, so long as he states for the record the consideration taken into account and the factual basis for his imposition of that sentence, La.Code Cr.P. art. 894.1; and (2) where the trial judge has considered the Guidelines and imposed a sentence, adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines." (Footnote omitted.)
The court went on to explain that
"because the Guidelines are not mandatory, where the trial judge adheres to the requirements of La.Code Crim.P. art. 894.1, and imposes a sentence within the statutory range, an appellate court is limited to a traditional review of the sentence for constitutional excessiveness, regardless of whether the trial court imposed sentence pursuant to the Guidelines or outside of the range called for by the Guidelines."
Id., at p. 8, 639 So.2d at 242.
Article 1, § 20 of the Louisiana Constitution of 1974, prohibits "cruel, excessive, or unusual punishment." Therefore, a sentence which fall within the statutory limits may nevertheless be excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Naquin, 527 So.2d 601 (La.App. 3d Cir.1988). To constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 557 So.2d 349 (La.App. 4th Cir. 1990) (citing State v. Washington, 414 So.2d 313 (La.1982)).
The trial judge followed Louisiana Code Criminal Procedure art. 894.1 in sentencing BROUSSARD. The trial court considered the guidelines and gave the factual basis for his sentence including aggravating and mitigating circumstances.
Since the trial judge complied with Article 894.1, this appellate court is limited to a traditional review of the sentence for constitutional excessiveness. State v. Smith, supra. We find that the sentence imposed was not so disproportionate to the severity of the *734 crime as to shock our sense of justice, therefore, the sentence was not excessive. We find no merit in this assignment of error.

Conclusion
The other crimes evidence concerning prior episodes of sexual assault and bribery of a witness offered by the state in its case in chief was properly admitted for the reasons cited herein. Additionally, we find that the sentence imposed was not excessive.
AFFIRMED.
NOTES
[1] Generally La.C.E. art. 412 provides that the victim's past sexual behavior in sexual assault cases is not admissible except as follows: (1) evidence of the victim's past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury; provided that such evidence is limited to a period not to exceed seventy-two hours prior to the time of the offense, and further provided that the jury be instructed at the time and in its final charge regarding the limited purpose for which the evidence is admitted; or (2) evidence of the victim's past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior.
[2] In that case the court pointed out that motive was a material issue: "The prosecution's case depended largely on inferences to be drawn from circumstantial evidence, so any evidence tending to prove that the defendant had a motive or reason for committing this crime was extremely probative. Defendant's physical abuse of the victim and his stated desire to rid himself of the child illustrate a motive factually peculiar to the murder of Jason Mayer."
[3] In explaining its reasoning, the court states: "In 20 American Jurisprudence, page 316, section 340, the rule of law is laid down as follows: `In criminal prosecutions, whenever the motive or intent of the accused is important and material, a somewhat wider range of evidence is permitted in showing such motive or intent than is allowed in support of other issues, otherwise, there would often be no means to reach and disclose the secret design or purpose of the act charged, in which the very gist of the offense may consist. Such intent or motive may be proved by either direct or circumstantial evidence. All evidentiary circumstances which are relative to, or tend to shed light on, the motive or intent of the defendant or which tend fairly to explain his actions are admissible in evidence against him, although they may have occurred previous to the commission of the offense.'" (Emphasis added.)
[4] In this case, the court reasoned: "Defendant claimed the charges were fabricated because of problems between him and his ex-wife. Thus, the victim's credibility was at issue and any evidence of defendant having a motive or plan to engage in sexual relations with young female relatives would be relevant to establish the crime occurred."
[5] The court admitted evidence of the defendant's disclosing the location of a gun and his offer of money to have the gun bored out. The gun was retrieved and tests revealed that it was the murder weapon. This other crimes evidence, held the trial court, was admissible as an admission by conduct.
[6] The court admitted evidence of the defendant's flight from the scene of the crime, and his subsequent entry into a third party's home and his resistance to leaving that location as evidence of his efforts to avoid apprehension. "Evidence of flight, concealment, and attempt to avoid apprehension is relevant. It indicates consciousness of guilt and, therefore, is one of the circumstances from which the jury may infer guilt." (Citations omitted.)
[7] The court admitted evidence of the defendant's flight and indirect attempts to procure a witness to provide him with an alibi. The court held that such evidence tends to show consciousness of guilt and is one of the circumstances from which guilt can be inferred.
[8] La.C.E. Art. 1103. "Article 404(B) and 104(A) neither codifies nor affects the law of other crimes evidence, as set forth in State v. Prieur, 277 So.2d 126 (La.1973), State v. Davis, 449 So.2d 466 (La.1984) and State v. Moore, 278 So.2d 781 (La.1973) and their progeny, as regards the notice requirement and the clear and convincing evidence standard in regard to other crimes evidence. Those cases are law and apply to Article 404(B) and 104(A), unless modified by subsequent state jurisprudential development."
[9] A. (1) Public bribery is the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:

(a) Public officer, public employee, or person in a position of public authority.
(b) Election official at any general, primary, or special election.
(c) Grand or petit juror.
(d) Witness, or person about to be called as a witness, upon a trial or other proceeding before any court, board, or officer authorized to hear evidence or to take testimony.
(e) Any person who has been elected or appointed to public office, whether or not said person has assumed the title or duties of such office.
(2) The acceptance of, or the offer to accept, directly or indirectly, anything of apparent present or prospective value, under such circumstances, by any of the above named persons, shall also constitute public bribery.
B. For purposes of this Section, "public officer", "public employee", or "person in a position of public authority", includes those enumerated in R.S. 14:2(9), and also means any public official, public employee, or person in a position of public authority, in other states, the federal government, any foreign sovereign, or any subdivision, entity, or agency thereof.
C. Whoever commits the crime of public bribery shall be fined not more than one thousand dollars, or imprisoned, with or without hard labor, for not more than five years, or both.